

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00120-CV

_____

IN THE INTEREST OF P.M.G., A CHILD

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 05D1047-CCL

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

## O P I N I O N

## I. Background

When Dorenda and Bruce Garner, Jr., were divorced in 2005, they were appointed joint managing conservators of their only child, P.M.G., with Dorenda having the "exclusive right to designate the primary residence of the child without regard to geographic location." Under the final divorce decree, Dorenda was required to provide Garner with thirty days' notice via certified mail before moving. The decree required Garner to pay child support to Dorenda, and Dorenda was ordered to include P.M.G. on her health insurance available through her employer. Conversely, Garner was ordered to pay Dorenda the actual cost of the health insurance for P.M.G. as additional child support, in the amount of $120.00 per month.

In 2011, Dorenda made plans to attend Texas Woman's University in Denton. She notified Garner by certified mail, as required by the final decree, thirty days prior to her move, of her intent to move and to change the child's residence. Having learned of Dorenda's intent to move to Denton with P.M.G., Garner filed a motion to modify the parent-child relationship, seeking the right to determine P.M.G.'s primary residence. The motion to modify also asked the trial court to issue a temporary order to restrict the primary residence of P.M.G. to Bowie County, Texas, among other things. Dorenda answered and filed a counter-petition to modify the parent-child relationship, asking the court to increase child support payments. In an amended counter-petition, Dorenda also requested judgment for all support arrearages, together with additional modification of the support order. Garner thereafter filed a petition to modify medical

2

support, asking for a credit on medical support payments made during an approximate two-year period when the child was uninsured.

After a hearing, the trial court issued a modification order which, among other things, (1) restricted P.M.G.'s primary residency to the Texarkana Independent School District, the Pleasant Grove Independent School District, the Redlick Independent School District, or the Liberty-Eylau Independent School District, Bowie County, Texas (for geographical purposes), (2) increased child support, and (3) found that because Dorenda did not provide medical insurance for P.M.G. from July 2009 through July 2011, Garner was entitled to a credit for medical insurance payments ordered and accrued from July 2009 through October 2012, including interest on any unpaid premiums.[1]

On appeal, Dorenda claims (1) the trial court had no authority to impose a geographic residency restriction because it failed to find a material and substantial change in circumstances, (2) there was insufficient evidence of a material and substantial change in circumstances to impose a geographic residency restriction, (3) the trial court erred by giving Garner a credit against a portion of his child support arrearage, and (4) the trial court abused its discretion by imposing a permanent geographic residency restriction when Garner petitioned only for a temporary restriction.

_____

[1]While a request for findings of fact and conclusions of law was made, none were filed.

3

## II. Analysis

### A. Standard of Review

We review the trial court's decision to modify conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle." *In re Marriage of Jeffries*, 144 S.W.3d 636, 638 (Tex. App.—Texarkana 2004, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Under this standard, legal and factual sufficiency are not independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion. *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.); *In re Davis*, 30 S.W.3d 609, 614 (Tex. App.—Texarkana 2000, no pet.). In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion. *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.). We consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Niskar*, 136 S.W.3d at 753–54. Where, as here, no findings of fact and conclusions of law are filed, it is "implied that the trial court made all the findings necessary to support its judgment." *Worford*, 801 S.W.2d at 109.

We are mindful that "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be

4

apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We, therefore, defer to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions. *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

### B. Material and Substantial Change in Circumstances

Dorenda initially complains that the trial court failed to specifically find a material and substantial change in circumstances to support the permanent geographic residency restriction and that in any event, there was insufficient evidence to support an implied finding of a material and substantial change in circumstances.[2] The Texas Family Code sets forth "significant hurdles" before a conservatorship order may be modified. *A.L.E.*, 279 S.W.3d at 428. A court may modify a conservatorship order "that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child" and

---

[2]Dorenda filed a motion for new trial complaining of the geographic residency restriction and the child support credit; however, she withdrew this motion before the trial court ruled on it. Dorenda did not object (in the withdrawn motion for new trial or otherwise) to the trial court's failure to make an express finding of a material and substantial change in circumstances. She relies on Rule 33.1(d) of the Texas Rules of Appellate Procedure to show error preservation on this issue. TEX. R. APP. P. 33.1(d). That Rule, however, only permits a challenge to the legal or factual sufficiency of the evidence for the first time on appeal in a nonjury case. The Rule provides:

> In a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence—including a complaint that the damages found by the court are excessive or inadequate, as distinguished from a complaint that the trial court erred in refusing to amend a fact finding or to make an additional finding of fact—may be made for the first time on appeal in the complaining party's brief.

TEX. R. APP. P. 33.1(d). We, therefore, limit our review of this issue to a determination of whether the evidence is sufficient to support an implied finding of material and substantial change in circumstances.

"the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the date of the rendition of the 2005 divorce decree. TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West Supp. 2012). If the moving party does not establish a material and substantial change in circumstances from the date of the decree, the trial court must deny the petition.[3] *A.L.E.*, 279 S.W.3d at 428.

The motion to modify simply alleged that "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified"; no detail was provided. At the modification hearing, the evidence revealed that P.M.G. resided with Dorenda in Bowie County until August 1, 2011, when the two moved to Denton. While residing with Dorenda in Bowie County, P.M.G. completed kindergarten and first grade at Morriss Elementary School.[4] Garner testified that Dorenda did not always have P.M.G. to school on time, and he was concerned that tardiness would endanger P.M.G.'s ability to remain at Morriss. Garner was also concerned because P.M.G.'s homework was not always returned the next day, and she was removed from the honor roll because she was not wearing tennis shoes to physical education class.

While living in Texarkana, P.M.G. was involved in several extracurricular activities, including dance, soccer, and Girl Scouts. Garner and his wife were involved in these activities

---

[3]The modification order specifically found that the residency restriction, which became effective June 15, 2012, was in the best interest of P.M.G. Dorenda does not challenge this finding. Her initial points of error speak only to the issue of a material and substantial change in circumstances. While Dorenda's brief includes a listing of factors that bear on the determination of a child's best interest in the context of residency restrictions and relocation, she does not analyze these factors within the context of a best interest analysis and does not request that we do so.

[4]P.M.G. was in second grade at the time of the modification hearing in April 2012.

6

and often drove P.M.G. to and from her various activities. These local activities ceased after the move, although P.M.G. took piano lessons in Denton.

In Texarkana, P.M.G. had a strong family support network. Her grandparents, uncles, aunts, and cousins live in the area. Neither Garner nor Dorenda have family in Denton.

Dorenda explained that she moved to Denton to attend nursing school at Texas Woman's University. Dorenda's ultimate goal was to enroll in the certified nurse mid-wife program at Baylor or in Dallas. She felt that she would have a better chance of admission to such a program if she received her degree from Texas Woman's University rather than Texarkana Community College. The motivation to return to school was financial—Dorenda wanted to be in a position to better provide for her children.[5]

Once in Denton, Dorenda enrolled P.M.G. at Newton Rayzor Elementary School. While attending Newton Rayzor, P.M.G.'s number of late arrivals to class increased. This issue was addressed at a parent-teacher conference in October. Although Dorenda had P.M.G. tested for the school's gifted and talented program, P.M.G. did not qualify.

On one occasion, Dorenda failed to pick up P.M.G. from school. She explained that during the afternoon, she had become sick and had gone home to rest. When she awoke, she had a message on her telephone from a friend, who had retrieved P.M.G. from school.

Dorenda concedes that she smoked cigarettes three times in the car while P.M.G. was a passenger and admitted to her son's father that she slapped P.M.G. in the face on one occasion.

---

[5]In addition to P.M.G., Dorenda has a younger son. Garner is not the father of this child.

Dorenda did not testify regarding this allegation. She conceded that she allowed her boyfriend to spend the night with her at the home in Denton while P.M.G. was present.

Since the time of the move, the parties have been meeting halfway between Texarkana and Denton to exchange P.M.G. and represented to the court that this arrangement was "working fine."

Dorenda maintains this evidence fails to show a material and substantial change in circumstances, claiming a move alone cannot support such a conclusion, citing *Bates v. Tesar*, 81 S.W.3d 411 (Tex. App.—El Paso 2002, no pet.). In *Bates*, the court stated,

> [W]e do not hold that relocation, regardless of distance, will suffice to establish a material and substantial change in circumstances. But if the custodial parent moves a significant distance, a finding of changed circumstances may be appropriate.

*Id.* at 430.

Moving a child from one location to another generally results in some change of the circumstances of the child or parents. The issue is whether such change is material and substantial. Some moves, depending on distance and other factors, may not materially alter or interfere with the relationship of the conservators with the child.[6] Deciding whether the move causes a substantial and material change requires intensive examination of the facts of each case. Factors to be considered in such a determination include the distance involved, the quality of the relationship between the noncustodial parent and the child, the nature and quality of the child's contacts with the noncustodial parent, whether the relocation would deprive the noncustodial

---

[6]We recognize that in today's world of instant communication by smart phones, internet access, texting, and even conversations allowing visual display, it is more convenient for parents to have ongoing contact with their children, even at great distances. While new technology provides better forms of communication, it cannot completely substitute for personal contact between a parent and child.

8

parent of regular and meaningful access to the child, the impact of the move on the quality and quantity of the child's contact with the noncustodial parent, the motive for the move, the motive for opposing the move, the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements, and the proximity, availability, and safety of travel arrangements. *Id.* We consider the court's decision with these factors in mind. *See In re A.C.S.*, 157 S.W.3d 9, 23 (Tex. App.—Waco 2004, no pet.).

We take judicial notice of the distance between Texarkana and Denton as 191 miles.[7] While this distance is not so great as to impede regular visitation by Garner, it is significant. P.M.G. and her father were very close during the time she lived in Texarkana. Garner was the leader of P.M.G.'s Daisy Girl Scout troop and coached her soccer team. He helped P.M.G. with her homework and ate lunch with her at school once each week. Charlene Raney, who was designated to perform a home study on both Garner and Dorenda, testified that P.M.G. was more closely bonded to Garner. After the move, Garner continued to have access to P.M.G. in accordance with the visitation schedule, but the extent of actual access was significantly diminished, as Garner could no longer continue his involvement in P.M.G.'s daily school and extracurricular activities. Even so, Garner has made an effort to remain actively involved in P.M.G.'s life. Garner presented evidence that since the move, Dorenda has had planned activities for P.M.G. during Garner's time of access to the child.

---

[7]Although the distance between the two cities is not included in the record, we may take judicial notice of the location of "cities, counties, boundaries, dimensions, and distances because geographical facts such as these are easily ascertainable and capable of verifiable certainty." *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 774 (Tex. App.—Beaumont 1992, writ denied).

When P.M.G. lived in Texarkana, Garner paid for her extracurricular activities because he was involved with her in those activities. Moreover, when P.M.G. lived in Texarkana, Garner and his extended family were always nearby and often helped when P.M.G. had to leave school for illness. Before she started kindergarten, P.M.G.'s grandparents cared for her during the week while Dorenda worked.

Dorenda justified the move for financial reasons. With a nursing degree, she would be in a position to better provide for P.M.G. There is evidence, however, that Dorenda's primary focus while in Denton was on her schooling. Raney testified that Dorenda lacked the income to properly support P.M.G. and did not make P.M.G. a priority in her life; she, therefore, recommended that Dorenda not have the ability to determine P.M.G.'s primary residence. Raney also found unacceptable the fact that Dorenda's boyfriend spent the night at her home while P.M.G. was present. Garner opposed the move because there is no network of family and friends in Denton, as there is in Texarkana, and because he could be more fully involved in P.M.G.'s life if she lived in Texarkana.

On the facts presented, we conclude that the trial court did not abuse its discretion in impliedly finding a material and substantial change in circumstances since the entry of the divorce decree. The trial court likewise did not abuse its discretion in finding that the modification ordered was in the best interest of the child.

### C.     *Child Support Arrearage Credit*

The final decree required Dorenda to include P.M.G. on her health insurance available through her employer. Conversely, Garner was ordered to pay Dorenda the actual cost of the

health insurance for P.M.G. as additional child support, in the amount of $120.00 per month. In Dorenda's amended counter-petition, she alleged that Garner was in arrears in payment of medical support and asked the trial court to hold him in contempt and confirm a judgment for the arrearages. Garner responded that Dorenda had ceased providing medical insurance for the child in July 2009 and that he should be given credit for amounts accrued for medical support from July 2009 until October 2011. In its modification order, the trial court gave Garner a "credit for medical insurance payments ordered and accrued from July, 2009, through October, 2012, including interest accrued on any unpaid premiums." Dorenda contends this credit is improper because it (1) allows Garner to receive a retroactive credit and reduction in his arrearage in violation of Section 157.263(b-1) of the Texas Family Code and (2) modifies the support order prior to the date of service of citation or appearance on the modification motion in violation of Section 156.401(b) of the Texas Family Code.

Garner claims these points of error have not been preserved for our review. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific ground for the desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (per curiam).

11

Dorenda complained of these issues in her motion for a new trial or to amend the judgment.[8] However, before the expiration of the trial court's plenary power[9] and before Dorenda's motion was ruled on by the trial court, Dorenda withdrew her motion. Because the motion was withdrawn over thirty days after the trial court signed the modification order, the immediate effect was to cause the trial court to lose plenary power over the case. *See Rogers v. Clinton*, 794 S.W.2d 9, 11 (Tex. 1990) (right to withdraw motion for new trial is absolute and deprived trial court of authority to set aside default judgment and order new trial); *see also* TEX. R. CIV. P. 329b(d) ("The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed."). In addition to divesting the trial court of plenary power, the withdrawal of the motion for new trial effectively withdrew Dorenda's challenge to the credit. *See generally Lemos v. State*, 27 S.W.3d 42, 47 (Tex. App.—San Antonio 2000, pet. ref'd) (holding that counsel's comment, "I withdraw my objection to that" waived any complaint on appeal); *see also Bay Area Healthcare Group*, *Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (per curiam) ("Error is waived if the complaining party allows the evidence to be introduced without objection."); TEX. R. APP. P. 33.1.

---

[8]In her motion for a new trial, Dorenda alleged that "this credit violated Texas Family Code [S]ections 156.401(b) and 157.263(b-1) and other controlling law by allowing the Petitioner to receive such a retroactive credit and reduction in his arrearage. Accordingly, good cause supports granting a new trial or modifying the judgment on this basis."

[9]The modification order was signed on December 3, 2012, and the motion for new trial was filed on December 19, 2012. Rule 329b(c) provides that a motion for new trial is overruled by operation of law seventy-five days after the judgment is signed if the motion is not determined by written order before that time. TEX. R. CIV. P. 329b(c). The motion for new trial was formally withdrawn on February 8, 2013.

Because the motion for new trial was withdrawn, the record must indicate some other means of preservation of this issue for our review. In October 2012, the trial court held a hearing to clarify a letter ruling issued prior to the entry of the modification order.[10] At that time, Dorenda objected

> to a modification of anything prior to the filing date of the petition in this current action which was July 22nd, 2011 pursuant to Texas Code 157.008, and I think the court will find there [sic] requires affirmative pleadings in regard to enforcement action before requesting an offset or something, and as far as I know there is no affirmative pleadings [sic] on record.

The trial court overruled this objection. This objection preserves the complaint that the trial court allowed a modification of the support order prior to July 22, 2011, in violation of Section 156.401(b). *See* TEX. FAM. CODE ANN. § 156.401(b) (West Supp. 2012). However, the objection does not preserve a complaint that a retroactive credit against child support arrearages was given in violation of Section 157.263(b-1). *See* TEX. FAM. CODE ANN. § 157.263(b-1) (West Supp. 2012). Therefore, we will consider whether the trial court violated Section 156.401(b). It provides:

> (b)     A support order may be modified with regard to the amount of support ordered only as to obligations accruing after the earlier of:
>
> (1)     the date of service of citation; or
>
> (2)     an appearance in the suit to modify.

TEX. FAM. CODE ANN. § 156.401(b).[11]

---

[10]Evidently, the letter ruling (which is not a part of the appellate record) addressed all issues relating to Garner's motion to modify but failed to address Dorenda's motion to enforce and to modify child support.

[11]Retroactive support was not awarded.

13

At the hearing, Garner's attorney stated that Garner had paid all arrearage completely "minus the amount between June of 2009 and October of 2011." This statement was not disputed. After hearing the presentations of the parties, the trial court stated that since it was undisputed that no insurance coverage was provided from July 2009 until June 2011, "the court is going to not order Mr. Garner to reimburse that windfall amount." The judgment ordered that Garner was "given credit for medical insurance payments ordered and accrued from July, 2009, through October, 2012 . . . ."

Here, the trial court was considering whether to enter a judgment of arrearage against Garner, but upon receiving information that all arrearage was paid except the medical support during a time that Dorenda had no medical insurance, the trial court modified the amount of medical support Garner owed since Dorenda had not provided the insurance and therefore had not incurred the medical insurance expense. The Texas Family Code only allows a modification of support after the earlier of the date of service of citation or an appearance in the suit to modify. TEX. FAM. CODE ANN. § 156.401(b). Consequently, the trial court erred in modifying the amount of support before July 22, 2011. Generally, we could modify the judgment to reflect the correct amount, but here we do not have definite figures on what amount of money Garner was in arrears for payment of medical support. We necessarily will have to remand this issue to the trial court to determine the amount Garner is obligated for medical support arrearage due before July 22, 2011.

14

*D.        Sufficient Pleadings Support the Trial Court's Order*

The trial court found that it was in the best interests of P.M.G. to modify the final decree to restrict "[t]he child's residency [] to the Texarkana Independent School District, the Pleasant Grove Independent School [District], the Redlick Independent School District or the Liberty[-] Eylau Independent School District, Bowie County, Texas (for geographical purposes not enrollment purposes)." Dorenda complains that because Garner did not plead for a permanent residency restriction, the relief granted exceeds that which was requested.

Garner contends this complaint was waived under Rule 90 of the Texas Rules of Civil Procedure, which requires that a party specially except to pleading defects. *See* TEX. R. CIV. P. 90. Dorenda's complaint is that the judgment is not supported by the pleadings, which does not relate to a pleading defect encompassed by Rule 90. Moreover, Dorenda claims that any part of the judgment not supported by the pleadings is void and, thus, the need to complain of such a defect is not required.[12] For this proposition, she relies on *Hubbard v. Lagow*, 576 S.W.2d 163, 166 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.) (pleadings invoke trial court's jurisdiction to render judgment, and part of judgment not supported by pleadings is void); *see also In re Estate of Bean*, 206 S.W.3d 749, 759 (Tex. App.—Texarkana 2006, pet. denied) (judgment not supported by pleadings and evidence cannot stand; judgment not supported by pleadings is considered void). To determine this issue, we must address the substance of Dorenda's complaint.

---

[12]Dorenda complained of the permanent residency restriction in her motion for new trial, which was subsequently withdrawn. Garner contends the withdrawal of this motion, assuming it was timely in the first place, amounts to a waiver of the issue presented.

15

Garner's petition to modify the parent-child relationship requested a modification of conservatorship. Specifically, Garner asked "that he be appointed as the person who has the right to designate the primary residency of the child." Garner further requested temporary orders (1) appointing "Petitioner and Respondent" as "temporary joint managing conservators," (2) naming Petitioner "as the conservator who has the exclusive right to designate the primary residence of the child," and (3) restricting P.M.G.'s primary residence to Bowie County, Texas.

The trial court entered a modification order permanently restricting the child's geographic residence.[13] The order did not otherwise modify the original provision of the decree giving Dorenda the exclusive right to designate P.M.G.'s primary residence.[14] In essence, the trial court modified Dorenda's exclusive right to designate the primary residence of P.M.G. with the imposition of the geographic residency restriction. The sole request for a geographic residency restriction was set forth in paragraph ten of Garner's motion to modify, expressly as a request for a temporary order. Garner did not seek a permanent residency restriction.

Rule 301 of the Texas Rules of Civil Procedure provides that "[t]he judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he [or she] may be entitled either in law or

---

[13]On October 11, 2011, the trial court held a hearing on the request for temporary orders. At the hearing, the parties agreed to a home study for Dorenda and Garner. They further agreed that medical insurance payments being made by Garner should cease as of the day of the hearing and that the visitation schedule should remain in place until the final hearing. The parties were meeting halfway between Texarkana and Denton to exchange the child and represented to the court that this arrangement was "working fine." The trial court approved of these agreements, but a formal order was not entered.

[14]As previously noted, the final decree gave Dorenda the exclusive right to designate the primary residence of the child, free of geographic restriction.

equity." TEX. R. CIV. P. 301.[15] Because the party's pleadings invoke the trial court's jurisdiction to render a judgment, an order not supported by the pleadings is void for lack of jurisdiction. *Moreno v. Moore*, 897 S.W.2d 439, 442 (Tex. App.—Corpus Christi 1995, no writ); *Hubbard*, 576 S.W.2d at 166; *Ex parte Fleming*, 532 S.W.2d 122, 123 (Tex. Civ. App.—Dallas 1975, no writ); *see also Bean*, 206 S.W.3d at 759. A judgment, absent issues tried by consent, must conform to the pleadings. *State v. Estate of Brown*, 802 S.W.2d 898, 900 (Tex. App.—San Antonio 1991, no writ). Relief, therefore, may not be granted in the absence of pleadings to support that relief. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983).

While a trial court may not grant relief to a party in the absence of pleadings to support such relief, pleadings may be liberally construed to support the judgment. *Frost v. Sun Oil Co. (Delaware)*, 560 S.W.2d 467 (Tex. App.—Houston [1st Dist.] 1977, no writ). To determine whether a claim was pled, the court must find those pleadings adequate to state, "with reasonable certainty" and without reference to information from another source, "the relief sought with sufficient information upon which to base a judgment." *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979).

In cases affecting the parent-child relationship, however, the pleading requirements are of lesser importance. *See, e.g., Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967). In that case, the petitioner sought a modification of the final decree to give him custody and control of the child during the summer months. The high court found that this pleading was sufficient to

---

[15]"There are sizable exceptions" to the concept that a judgment must conform to the pleadings, "most of which have to do with the idea that a matter may be tried by consent." *State for the Protection of Cockerham v. Cockerham*, 218 S.W.3d 298, 304 (Tex. App.—Texarkana 2007, no pet.).

support a judgment for lesser relief in the nature of modified visitation rights with permanent custody as previously decreed. *Id.* The high court stated:

> It is beside the point that . . . the trial court, whether erroneously or not, construed the pleadings of petitioner as seeking only a modification of visitation rights; the point is that once the child is brought under its jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to make proper dispositions of all matters comprehended thereby in a manner supported by the evidence.

*Id*. This Court addressed the issue of pleading requirements in *In re Macalick*, 13 S.W.3d 43 (Tex. App.—Texarkana 1999, no pet.). In that case, Thompson claimed that specific modifications in the final order must have been requested in a pleading in order to provide her with notice of the controverted issues to be decided and to afford her due process. We recognized that "in cases affecting the parent/child relationship, when the best interest of the child is always the overriding consideration, technical rules of pleading and practice are of little importance, and fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of the children." *Id*. at 45 (citing *Leithold*, 413 S.W.2d at 701). Here, Garner sought a modification of conservatorship and asked that he be appointed as the person who has the right to designate the primary residence of the child. This request necessarily invoked the jurisdiction of the trial court over the matters of custody and control, imbuing the trial court with "decretal powers" over P.M.G.'s geographic residence.[16] *See Leithold*, 413 S.W.2d at 701 ("a suit properly invoking the jurisdiction of a court with respect to

---

[16]Because we find the pleadings sufficient to support the trial court's order, we do not address the issue of trial by consent.

18

custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters . . . .").

Because the pleadings were sufficient to support the trial court's order, the order is valid and enforceable.

## III. Conclusion

We remand the case to the trial court to determine the amount Garner is obligated for medical support arrearage due before July 22, 2011. In all other respects, we affirm the judgment of the trial court.


                              Jack Carter
                              Justice

Date Submitted:    June 26, 2013
Date Decided:    July 16, 2013