**Affirmed and Memorandum Opinion filed March 12, 2019.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-17-00715-CV

## IN THE INTEREST OF H.P.J., A CHILD

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-27477**

## MEMORANDUM OPINION

Gregory Thomas Josefsberg ("Father") appeals the denial of his petition to modify the terms of the trial court's July 13, 2015 conservatorship order for his child. Father asserts the trial court abused its discretion by (1) concluding there was no material or substantial change in the parties' circumstances; (2) permitting Mother to serve as joint managing conservator of the child; and (3) failing to render a possession order in Father's favor. For the reasons below, we affirm.

### BACKGROUND

Father and Mother are the parents of H.P.J., a four-year old child. After ending their relationship, Father and Mother entered into an agreed final order in a

suit affecting the parent-child relationship in May 2014. The trial court signed the order in which Father and Mother agreed to serve as H.P.J.'s joint managing conservators, with Mother retaining the right to designate H.P.J.'s primary residence. The trial court signed an order on July 13, 2015, modifying the terms of the conservatorship.

Father filed an "Emergency Petition to Modify Parent-Child Relationship" in June 2016, seeking to modify the trial court's July 2015 conservatorship order.[1] Father filed a first and second amended petition. Father's second amended petition requested the trial court modify the terms of H.P.J.'s conservatorship and (1) appoint Father as H.P.J.'s sole managing conservator with the sole right to designate H.P.J.'s primary residence; or (2) alternatively, appoint Father as H.P.J.'s joint managing conservator with the sole right to designate H.P.J.'s primary residence and with all of the exclusive rights of a managing conservator; or (3) alternatively, appoint Father as H.P.J.'s joint managing conservator with the sole right to designate H.P.J.'s primary residence and grant Father expanded possession. Father also requested the trial court deny Mother access to H.P.J. or, in the alternative, order that Mother's access to H.P.J. be continuously supervised. Father's second amended petition asserted that the requested modifications were in H.P.J.'s best interest.

Mother filed in response a "Counterpetition to Modify Parent-Child Relationship." Mother's counterpetition requested the trial court modify the terms of H.P.J.'s conservatorship and order the parties to (1) exchange H.P.J. at a "neutral, public setting;" and (2) "communicate only through a co[-]parenting website." Mother's counterpetition asserted that the "circumstances of the child, a

---

[1] Father, an attorney, was represented by counsel in the underlying trial court proceeding. Father represents himself on appeal.

conservator, or other party affected by the order to be modified have materially and substantially changed." Mother filed a notice of nonsuit, which the trial court granted in an order signed April 26, 2017.

The parties proceeded to a three-day bench trial in May 2017. The following witnesses testified: (1) Father; (2) Mother; (3) Carolyn Rawlins, the director at H.P.J.'s preschool; and (4) Adrian Smith and Shirley Delacruz, two of Father's neighbors at his Houston condominium complex.

Father's and Mother's testimony was contentious and conflicting. Father and Mother testified regarding (1) their relationship with each other; (2) their relationships with H.P.J.; (3) their financial situations, living arrangements, and personal lives; and (4) H.P.J.'s living and school arrangements. Rawlins testified regarding an incident when H.P.J. was dropped off at preschool with "cut marks across his stomach." Smith and Delacruz testified regarding incidents at Father's condominium complex.

The trial court signed a final judgment on June 9, 2017, denying the relief requested in Father's second amended petition. The trial court's final judgment states:

> After considering the pleadings, the parties' testimony, the evidence presented, and the argument of counsel, the Court **FINDS** that no material and/or substantial change has occurred since the rendition of the *Order in Suit to Modify Parent-Child Relationship* which was signed by the Court on July 13, 2015.

Father filed a request for findings of fact and conclusions of law and a notice of past due findings of fact and conclusions of law. The trial court filed findings of fact and conclusions of law in January 2018. Father timely appealed.

3

## STANDARDS OF REVIEW

We review the trial court's denial of Father's petition to modify for an abuse of discretion. *See Flowers v. Flowers*, 407 S.W.3d 452, 456 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.— Houston [14th Dist.] 2016, pet. denied) ("Trial courts have wide discretion with respect to custody, control, possession, support, and visitation matters.").

The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re C.A.M.M.*, 243 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). "But the fact that a trial court may decide a matter within its discretionary authority in a different manner from an appellate court in a similar circumstance does not demonstrate an abuse of discretion." *Id.* at 214-15.

Under an abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error but instead are relevant factors assessed to determine if the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d at 899-900. When examining legal sufficiency, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *In re J.R.P.*, 526 S.W.3d 770, 777 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We indulge every reasonable inference that would support the challenged finding. *Id.* Evidence is legally sufficient "if it would enable reasonable and fair-minded people to reach the decision under review." *Id.*

For a factual sufficiency review, we examine the entire record and consider

evidence favorable and contrary to the challenged finding. *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *In re J.R.P.*, 526 S.W.3d at 777. "It is not within the province of the court to interfere with the factfinder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony." *In re C.E.M.-K.*, 341 S.W.3d 68, 81 (Tex. App.—San Antonio 2011, pet. denied).

In a bench trial, the trial court is in the best position to observe and assess the witnesses' demeanor and credibility, and "to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (quoting *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.)). "As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute its judgment for that of the trial court." *In re J.R.P.*, 526 S.W.3d at 778.

## ANALYSIS

Father presents nine issues on appeal challenging the denial of his petition to modify the trial court's July 2015 conservatorship order. Father contends in his first seven issues that the trial court abused its discretion when it found that there was not a material or substantial change in circumstances since the rendition of the July 2015 conservatorship order. In his eighth issue, Father asserts the trial court abused its discretion by permitting Mother to continue as H.P.J.'s joint managing conservator. Father argues in his ninth issue that the trial court erred in failing to render a possession order in Father's favor.

5

## I.  No Material and Substantial Change in Circumstances

Father's first six issues challenge the trial court's changed-circumstances determination.  In his first issue, Father argues that in her counterpetition Mother judicially admitted that a material and substantial change in circumstances occurred.  Father's second through sixth issues focus on specific factual circumstances that Father contends constitute material and substantial changes:

- Mother's marriage;

- changes in Father's and Mother's living arrangements;

- Mother's alleged mistreatment of H.P.J.;

- Mother's previous boyfriend's threats against H.P.J.;

- Mother's alleged denial of Father's possession; and

- alleged family violence that rendered Mother an improper person to exercise custody.

In an effort to ensure stability and continuity for children's living arrangements, Texas law delineates the showing necessary to modify a trial court's conservatorship order.  *See In re A.L.H.*, 515 S.W.3d 60, 79 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).  The terms of a conservatorship may be modified only if (1) modification is in the child's best interest, and (2) "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the date of rendition of the conservatorship order.  Tex. Fam. Code Ann. § 156.101(a) (Vernon 2014).

The existence of a material and substantial change in circumstances is a threshold determination.  *In re A.L.E.*, 279 S.W.3d at 428.  In making this determination, the trial court "is not confined to rigid or definite guidelines;" rather, the trial court's determination is fact-specific and must be made according

6

to the circumstances as they arise. *Id.* Material changes may include (1) the marriage of one of the parties; (2) changes in the home surroundings; (3) mistreatment of the child; or (4) a party becoming an improper person to exercise custody. *Arredondo v. Betancourt*, 383 S.W.3d 730, 734-35 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The person seeking the modification has the burden of establishing a material and substantial change. *London v. London*, 94 S.W.3d 139, 145 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

"[N]ot every change in conditions justifies a change of custody, but only those changes which reasonably could be said to injuriously affect the child's best interests." *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex. Civ. App.—Dallas 1981, no writ). Change alone does not justify modification unless changed needs also are shown. *See Zeifman v. Michels*, 212 S.W.3d 582, 593 (Tex. App.—Austin 2006, pet. denied). The policy behind the material-and-substantial-change requirement is to prevent constant relitigation with respect to children and create stability in the conservatorship. *In re M.N.G.*, 113 S.W.3d 27, 33 (Tex. App.—Fort Worth 2003, no pet.); *Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

To show that a material and substantial change in circumstances has occurred, the movant must show conditions as they existed at the time the prior conservatorship order was signed. *In re A.L.E.*, 279 S.W.3d at 428 (citing *Zeifman*, 212 S.W.3d at 589). Once these circumstances have been shown, the movant must show what material and substantial changes have occurred in the intervening period. *Id.* A material and substantial change in circumstances may be shown by direct or circumstantial evidence. *Arredondo*, 383 S.W.3d at 735.

## A. Mother's Alleged Judicial Admission in Pleadings

In her counterpetition, Mother requested the trial court modify its July 2015

conservatorship order and require the parties to (1) exchange H.P.J. at a "neutral, public setting," and (2) communicate only through a co-parenting website. To support these requested changes, Mother asserted that "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed . . . ." Father asserts that this statement constitutes a judicial admission that contradicts the trial court's finding that no material or substantial change in circumstances had occurred.

"A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue and bars the admitting party from disputing it." *In re Guerrero*, 465 S.W.3d 693, 705 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). As long as a judicial admission is unretracted, it must be taken as true by the factfinder and is binding on the declarant. *Id.*

Statements of fact made in a party's pleadings may constitute judicial admissions. *See, e.g., In re P.A.C.*, 498 S.W.3d at 219 n.6. But to operate as a formal waiver of proof, a judicial admission must be made in a party's *live* pleading — a judicial admission cannot be based on statements contained in pleadings that have been abandoned. *See Kilburn v. Fort Bend Cty. Drainage Dist.*, 411 S.W.3d 33, 39 n.2 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("statements in a superseded pleading cannot be considered judicial admissions" (internal quotation omitted)); *Atlas Gulf-Coast, Inc. v. Stanford*, 329 S.W.3d 920, 923 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("judicial admissions cannot be based on an abandoned pleading"). Accordingly, petitions that have been amended, superseded, or dismissed are no longer live and cannot supply a basis for judicial admissions.[2] *See Kilburn*, 411 S.W.3d at 39 n.2; *Atlas Gulf-Coast, Inc.*,

---

[2] Statements in abandoned pleadings may be accorded evidentiary value but are not conclusive. *See Louviere v. Hearst Corp.*, 269 S.W.3d 750, 755 (Tex. App.—Beaumont 2008, no pet.); *Martinez v. Midland Credit Mgmt., Inc.*, 250 S.W.3d 481, 485-86 (Tex. App.—El Paso

329 S.W.3d at 923; *see also Drake Ins. Co. v. King*, 606 S.W.2d 812, 817 (Tex. 1980) (*superseded on other grounds by Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231 (Tex. 2007)) (statement in original petition was not a judicial admission where petition was superseded by an amended petition).

Here, Father attempts to rely on a statement in Mother's "Counterpetition to Modify Parent-Child Relationship." Mother subsequently filed a notice of nonsuit with respect to the claims in her counterpetition, which the trial court granted in an order signed April 26, 2017.

After the trial court granted Mother's notice of nonsuit, Mother's counterpetition was no longer a live pleading and could not supply a basis for judicial admissions. *See Drake Ins. Co.*, 606 S.W.2d at 817; *Kilburn*, 411 S.W.3d at 39 n.2; *Atlas Gulf-Coast, Inc.*, 329 S.W.3d at 923. Therefore, because Mother's counterpetition was not a live pleading, statements within it could not constitute judicial admissions. *See Kilburn*, 411 S.W.3d at 39 n.2; *Atlas Gulf Coast, Inc.*, 329 S.W.3d at 923. The changed-circumstances statement in Mother's counterpetition did not waive Father's burden of proof on this issue. *See Kilburn*, 411 S.W.3d at 39 n.2; *Atlas Gulf Coast, Inc.*, 329 S.W.3d at 923.

We overrule Father's first issue.

### B.    Mother's Marriage

Father asserts that Mother's marriage constitutes a material and substantial change in circumstances and that the trial court abused its discretion when it found otherwise. Father supports his argument with reference to the following portion of

---

2008, no pet.). These statements must be introduced into evidence before they can be considered by the factfinder. *Kilburn*, 411 S.W.3d at 39 n.2 (quoting *Huff v. Harrell*, 941 S.W.2d 230, 239 (Tex. App.—Corpus Christi 1996, writ denied)).

9

his testimony:

> Q. Is it also true that at the time the last order was signed, [Mother] was not married?
>
> A. That is correct.
>
> Q. And at this time [Mother] is married; is that correct?
>
> A. Yes, that is correct.

Father does not point to any testimony or other evidence showing how Mother's marriage affects H.P.J.'s circumstances or the parties' ability to comply with the terms of the July 2015 conservatorship order.

Father does not cite any cases holding that a conservator's marriage, standing alone, necessarily gives rise to a material and substantial change in circumstances. The cases Father cites state only that marriage *may* constitute a change in circumstances. *See Arredondo*, 383 S.W.3d at 734-35 (marriage "may" be a material and substantial change); *In re A.L.E.*, 279 S.W.3d at 429 (marriage "can" be a material and substantial change). These cases do not support the conclusion that Mother's marriage alone constitutes a material and substantial change. *See Arredondo*, 383 S.W.3d at 734-35; *In re A.L.E.*, 279 S.W.3d at 429.

Reviewing the record as a whole, Mother's marriage does not render the trial court's changed-circumstances finding an abuse of discretion. The record does not contain any evidence that Mother's marriage injuriously affected H.P.J. When asked at trial whether "there's been any impact on [H.P.J.] since the date of [Mother's] marriage," Father did not identify any changes.

Mother testified that H.P.J. has been positively affected by the marriage. When asked how H.P.J. "gets along with [Mother's] husband," Mother testified that H.P.J. "runs in the door, and he hugs [Mother's husband] by the leg." Mother stated that her husband "understands the appropriate relationship he has with

10

[H.P.J.] as his stepfather." Mother testified that she did not have any concerns about her husband's relationship with H.P.J. Mother testified that she and her husband earn approximately $200,000-300,000 a year and can "comfortably provide" for their family.

Considering the record in its entirety, the challenged finding is supported by legally and factually sufficient evidence. *See In re R.T.K.*, 324 S.W.3d at 899-900. The record not contain any evidence showing injurious changes brought about by Mother's marriage and the record contains testimony identifying benefits the marriage has conferred on H.P.J. *See Zeifman*, 212 S.W.3d at 593; *Jeffers*, 615 S.W.2d at 253. Because the trial court's finding is supported by evidence of a substantive and probative character, Mother's marriage does not render the trial court's changed-circumstances finding an abuse of discretion. *See In re J.R.P.*, 526 S.W.3d at 777.

We overrule Father's second issue.

## C.     Changes in Father's and Mother's Living Arrangements

Asserting that the trial court's changed-circumstances finding constitutes an abuse of discretion, Father points out that (1) he and Mother were living together when the July 2015 conservatorship order was signed but no longer lived together at the time of trial; and (2) Mother was living with her husband at the time of trial.

Father does not state how these changes affect H.P.J.'s circumstances or the parties' ability to comply with the terms of the conservatorship order. Father does not cite any cases to support his contention that adjustments to a parent's living arrangements, standing alone, constitute a material and substantial change.

"Some moves, depending on distance and other factors, may not materially alter or interfere with the relationship of the conservators with the child." *In re*

11

*P.M.G.*, 405 S.W.3d 406, 412 (Tex. App.—Texarkana 2013, no pet.). Determining whether a move causes a material and substantial change requires examining the facts of the case. *Id.* Factors to be considered include the distance involved, the quality of the relationship between the noncustodial parent and the child, whether the relocation would deprive the noncustodial parent of regular and meaningful access to the child, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements. *See id.*

The changes Father identifies do not render the trial court's changed-circumstances determination an abuse of discretion. *See In re R.T.K.*, 324 S.W.3d at 899. The record does not indicate that Mother's move injuriously affected H.P.J.'s circumstances or otherwise damaged Father's relationship with H.P.J. *See In re P.M.G.*, 405 S.W.3d at 412; *Jeffers*, 615 S.W.2d at 253.

Father testified that Mother lived in Meyerland when the July 2015 conservatorship order was signed and that Mother "currently live[d]" in Meyerland at the time of trial. Mother testified that she moved from a condominium to a house after the July 2015 order was signed, stating that her condominium had flooded twice since she had lived there. Mother stated her new house was "basically, on the same street" as her condominium. Mother testified that she "did research before moving" and was "looking for a good school." Mother stated that she lives close to a magnet school that her older son attends; Mother plans for H.P.J. to attend the magnet school when he is older.

Mother testified that H.P.J. attended preschool at the Growing Tree Academy when the July 2015 conservatorship order was signed. At the time of trial, H.P.J. attended the Holloway Preschool. Discussing this change, Mother stated that "the quality of care had gone down" at the Growing Tree and the preschool "kept increasing the prices." Mother said she discussed with Father

changing H.P.J.'s preschool; Mother testified that Father "called and he spoke to [the director at the Holloway Preschool] and set up a time for the both of us to go tour the facility." Mother testified that both she and Father decided to move H.P.J. to the Holloway Preschool.

The Growing Tree and the Holloway Preschool both are located in southwest Houston. Father's and Mother's testimony suggests that both parties pick up and drop off H.P.J. at preschool. Father also testified that both he and Mother attend H.P.J.'s soccer practice and games. This evidence, considered altogether, does not suggest that the changes to Father's and Mother's living arrangements had an injurious effect on H.P.J. *See In re P.M.G.*, 405 S.W.3d at 412; *Jeffers*, 615 S.W.2d at 253.

Describing H.P.J.'s current living situation, Mother testified that H.P.J. lives with Mother, her husband, and H.P.J.'s two siblings. H.P.J. shares a bedroom with his older brother, each boy having a separate bed; Mother testified that the brothers "get along" and that H.P.J. "loves his brother." Mother also testified that her husband is a "great father" and that he "understands the appropriate relationship he has with [H.P.J.] as his stepfather."

Although the parties' living arrangements have changed, the record as a whole does not indicate that the trial court's changed-circumstances determination is an abuse of discretion. The record does not contain evidence showing that these adjustments changed H.P.J.'s needs or otherwise adversely affected his circumstances or his relationships with Father and Mother. *See Zeifman*, 212 S.W.3d at 593; *Jeffers*, 615 S.W.2d at 253.

We overrule Father's third issue.

13

**D.      Mother's Alleged Mistreatment of H.P.J.**

Father alleges that the following "instances of negligent supervision or child abuse of [H.P.J.] committed by [Mother]" occurred after the trial court signed the July 2015 conservatorship order:

- April 2016:  Mother "held [H.P.J.] down on the bathroom floor and forcefully brushed [H.P.J.'s] teeth."

- June 2016:  Mother "carried [H.P.J.] by the wrist through the house while [H.P.J.] was screaming and threw [H.P.J.] against a wall."

- December 2016:  H.P.J. "received 7 stitches in his head while in [Mother's] care."  A photograph of H.P.J. showing stitches on his forehead was admitted into evidence.  Father testified that Mother "didn't seem like she knew exactly how [the incident] happened," but "said that [H.P.J.] was horse[-]playing with his eight-year-old brother when it happened."

- January 2017:  H.P.J. "suffered cut[s] or burns on his torso."  Several photographs of H.P.J. showing red marks on his torso were admitted into evidence.  Father testified that Mother gave "six different stories" for the cause of the injuries.  Father stated that Mother did not notify the preschool of the injuries before dropping H.P.J. off and that Mother "refused to respond" to inquiries from H.P.J.'s preschool regarding the injuries.

Father argues that these incidents constitute a material and substantial change in circumstances.  We analyze these incidents below.

Mother denied the April 2016 and June 2016 incidents and testified that she "never intentionally injured or put [H.P.J.] in danger."  Mother denied "pick[ing] up [H.P.J.] by his wrist and carr[ying] him around the house."

With respect to the December 2016 incident involving stitches, Mother stated that H.P.J. sustained the injury after falling while engaging in horseplay with his older brother.  Mother testified that she took H.P.J. "straight to the urgent care" after the incident occurred.

14

Addressing the injuries on H.P.J.'s torso, Mother testified that H.P.J. had scratched himself with a razor he found in the bathtub while bathing. Mother stated that the injury occurred when she stepped out of the bathroom to "grab [her] other son to take a bath." Mother testified that H.P.J. climbed up the soap dish and retrieved the razor from the window sill. Mother stated that the razor was left on the window sill by her daughter.

Mother testified that she did not immediately recognize the injuries as those caused by a razorblade because "[t]hey were just really light, and there was a little bit of blood." Mother testified that the injuries darkened overnight and that she put Neosporin on H.P.J.'s torso before dropping him off at preschool the next morning. Mother stated that she missed a call from H.P.J.'s preschool later that day when she was picking up her daughter from an out-of-town school. Mother testified that she saw the missed call the next day and spoke to Rawlins, the preschool director, regarding the injuries.

According to Mother's testimony, after the incident the trial court "appointed [an amicus attorney] with the direction that [the attorney] was to . . . immediately get to the bottom of the razor incident or the scratches on [H.P.J.]." The amicus attorney met with Mother; met alone with H.P.J.; and walked through Mother's house. No restrictions were placed on Mother after the investigation.

Rawlins also testified with respect to the injuries on H.P.J.'s torso, stating that the injuries looked like "cut marks or burn marks" and "bec[a]me redder and more irritated-looking throughout the day." Rawlins recalled that Mother originally stated the injuries "could have been an allergic reaction to the detergent." Mother later told Rawlins that the injuries were caused by a razor H.P.J. grabbed while bathing.

Rawlins testified that the injuries did not "r[i]se to the level of having to call

15

the State for abuse or neglect." Rawlins also stated that she had not "gotten the sense from any of [her] interactions with [Mother] and [H.P.J.] that [H.P.J.] is somehow getting abused or neglected by his mother[.]"

Reviewing the record as a whole, Father's allegations of child abuse and the evidence regarding these incidents do not render the trial court's changed-circumstances determination an abuse of discretion.

Child abuse may constitute a material and substantial change in circumstances. *See Arredondo*, 383 S.W.3d at 734-75. But, as evident from the recitation above, Father's and Mother's testimony addressing the alleged incidents was in conflict. Father asserted four incidents of child abuse. Mother denied intentionally injuring H.P.J. and provided explanations for the injuries to H.P.J.'s forehead and torso. An amicus attorney investigated after the razor incident and the court did not place any restrictions on Mother with respect to H.P.J. Rawlins testified that she had not gotten the impression H.P.J. was abused or neglected by Mother.

The trial court, as the factfinder, was best positioned to resolve these underlying facts and credibility determinations and to observe and assess the witnesses' demeanor and credibility. *See In re J.R.P.*, 526 S.W.3d at 778; *In re A.L.E.*, 279 S.W.3d at 427; *see also Burns v. Burns*, 116 S.W.3d 916, 920 (Tex. App.—Dallas 2003, no pet.) ("Where, as here, the parties testified to different versions of the same encounter, we recognize that the trial court is the sole judge of the weight and credibility of the evidence."). We defer to the trial court's resolution of conflicting evidence and conclude that Father's child-abuse allegations do not render the trial court's changed-circumstances determination an abuse of discretion.

We overrule Father's fourth issue.

### E.    Mother's Previous Boyfriend's Threats Against H.P.J.

At trial, Father played a recording of a June 2016 conversation between Father and Joshua Ferris, Mother's previous boyfriend. During the conversation, Ferris told Father, "Your baby can get killed too." Father asserts that the trial court abused its discretion when it concluded that this threat did not constitute a material and substantial change in circumstances.

Mother testified that she did not see Ferris after he made the threat during his conversation with Father in June 2016. Mother testified that dating Ferris "was a huge mistake" and stated that she ended her romantic relationship with Ferris after learning about his criminal history. Father acknowledged that Mother was no longer in a relationship with Ferris at the time of trial.

To prove that a material change in circumstances has occurred, the movant must demonstrate what conditions existed at the time of the entry of the prior order as compared to the circumstances existing at the time of trial. *In re A.L.E.*, 279 S.W.3d at 428; *Zeifman*, 212 S.W.3d at 589. According to Mother's testimony, she ended her relationship with Ferris by the time the parties proceeded to trial in May 2017. Father acknowledged that Mother was no longer dating Ferris as of the time of trial. Accordingly, because Mother's relationship with Ferris was not a condition existing as of the time of trial, it was not a condition that would give rise to a material and substantial change in circumstances. *See In re A.L.E.*, 279 S.W.3d at 428; *Zeifman*, 212 S.W.3d at 589.

We overrule Father's fifth issue.

### F.    Mother's Alleged Denial of Father's Periods of Possession

Father asserts that Mother denied him "multiple periods of possession, including Father's Day weekend." Father asserts that the trial court abused its

17

discretion when it concluded that these denials of possession did not constitute a material and substantial change in circumstances.

Mother challenged these accusations and testified that she did not deny Father his periods of possession with H.P.J.[3] Mother testified that Father would "ke[ep] [H.P.J.] from [her] for periods of time where [she] couldn't check up on him" and that "there were periods of time where [Father] would disappear and he wasn't involved" in H.P.J.'s life.

Like the allegations of child abuse discussed above, Father's and Mother's testimony conflicts with respect to whether Mother denied Father court-ordered possession. We defer to the trial court's resolution of this conflicting evidence as well as any attendant credibility determinations; we decline to substitute our judgment for that of the trial court. *See In re J.R.P.*, 526 S.W.3d at 778. The trial court was in the best position to form conclusions with respect to Father's allegations. *See In re A.L.E.*, 279 S.W.3d at 427. Based on the record as a whole and the conflicting testimony addressing this allegation, the trial court's conclusion that there was not a material and substantial change in circumstances was not an abuse of discretion. *See In re C.A.M.M.*, 243 S.W.3d at 214.

We overrule Father's sixth issue.

### G.    Father's Allegations of Family Violence

In his seventh issue, Father asserts that "[f]amily violence was perpetrated by [Mother] against [Father] and [this] violence conforms to a history of abuse."

---

[3] In her appellate brief, Mother's discussion of this issue also references the trial court's August 2017 proceeding on Father's "Second Amended Motion for Enforcement of Possession Or Access and Motion for Enforcement of a Protective Order." Because this proceeding occurred after the trial on Father's petition to modify the July 2015 conservatorship order and the trial court's June 9, 2017 final judgment, we do not consider the enforcement proceeding in our analysis of this issue. *See In re J.R.P.*, 526 S.W.3d at 777 (appellate court's review of modification order analyzed only evidence presented at bench trial).

Father's argument rests on the following allegations:

- June 2014:  Mother "arriv[ed] at [Father's] residence; follow[ed] him around the complex and ultimately assault[ed] him while holding [H.P.J.] in her arms."  A photograph of Father showing a red mark on his stomach was admitted into evidence.  Father's neighbor, Smith, testified that Mother "r[an] after [Father] and slam[med] him in the gate."

- December 2014:  Mother "br[oke] into [Father's] residence, trash[ed] his home office, [held] him down on his bed, and while screaming in his face, wrote the word 'LOSER' on his chest in permanent magic marker."  Admitted into evidence was a photograph of Father's torso showing the word "LOSER" written on his chest.

- June 2016:  Mother "physically attacked [Father] from behind causing multiple injuries."  Multiple photographs of Father showing scratches on his neck, back, and arms were admitted into evidence.

Father asserts that these incidents violated his 2013 protective order against Mother and render the trial court's changed-circumstances finding an abuse of discretion.[4]

We first address the June 2014 and December 2014 incidents.  To prove that a material change in circumstances occurred, the movant must demonstrate what conditions existed at the time of the entry of the prior order as compared to the circumstances existing at the time of trial.  *In re A.L.E.*, 279 S.W.3d at 428; *Zeifman*, 212 S.W.3d at 589.  The first two incidents, which allegedly violated Father's 2013 protective order, occurred before the July 2015 conservatorship order was signed.  These incidents therefore were not material to the trial court's changed-circumstances finding.  *See In re A.L.E.*, 279 S.W.3d at 428; *Zeifman*, 212

---

[4] In December 2013, the trial court signed two protective orders:  one requested by Father seeking protection from Mother and one requested by Mother seeking protection from Father.  Read together, in the protective orders the trial court finds that Father and Mother committed family violence against each other; and in the orders the court places restrictions on Father's and Mother's interactions with each other.  Both protective orders expired in December 2015.

S.W.3d at 589.

With respect to the June 2016 incident, Mother testified that the injuries Father complained of were the result of an altercation where both parties sustained injuries. Mother described the altercation as follows:

> [Father] was on top of me, we were right at the — I don't know for sure if that's when — it was a long altercation that went through the house over the phone and it probably lasted a good ten minutes and so we both have injuries from it.

The trial court was free to disbelieve Father's testimony indicating that Mother was the sole aggressor in the 2016 incident and believe Mother's testimony that the incident was a mutual altercation. *See In re J.R.P.*, 526 S.W.3d at 778; *see also, e.g., Hinojosa v. Hinojosa*, No. 14-11-00989-CV, 2013 WL 1437718, at *3 (Tex. App.—Houston [14th Dist.] Apr. 9, 2013, no pet.) (mem. op.) (the trial court was free to resolve parties' conflicting testimony regarding physical abuse). The trial court did not abuse its discretion by concluding that Father's description of the June 2016 incident did not constitute changed circumstances necessitating modification of the July 2015 conservatorship order. *See In re J.R.P.*, 526 S.W.3d at 777.

Moreover, Mother also testified with respect to her "volatile" relationship with Father. Mother testified that Father regularly threatened to "take [her] kids away;" to have her put in jail; and to get her fired from her job as a mortgage banker. Mother testified that, during Father's periods of possession, he would limit Mother's ability to see or talk to H.P.J. Mother stated that there were numerous times when Father would go for about a month without communicating with her or H.P.J. Mother testified that Father would insult her in front of H.P.J.

Mother testified that Father previously accused her of having sexual relationships with several of her coworkers, and that Father emailed allegedly

incriminating photographs of Mother to the wives of the coworkers with whom he accused her of having an affair. Father acknowledged sending these emails.

On cross-examination, Father also acknowledged calling numerous parties with allegations regarding Mother's fitness as a parent, including Mother's ex-husband and her ex-husband's parents. Father also acknowledged maintaining a blog where he discussed his "custody case with [Mother] who has a narcissistic personality disorder." Father testified that his blog has generated 18,000 views. Father stated that he did not use Mother's name on the blog but acknowledged that she was the person described in the blog.

We are to defer to the trial court's resolution of conflicting evidence and credibility determinations — a standard particularly appropriate here, given the nature of Father's and Mother's testimony. Father and Mother described a contentious relationship, each depicting the other as the source of conflict. The trial court, as factfinder, was in the best position to observe and assess Father's and Mother's demeanors and credibility, and to form its own conclusions. *See In re A.L.E.*, 279 S.W.3d at 427. The trial court acted within its discretion in finding that Father's allegations of abuse did not constitute a material and substantial change in circumstances warranting a modification of the July 2015 conservatorship order.

We overrule Father's seventh issue.

## II.     Joint Managing Conservators

Father asserts the trial court abused its discretion by permitting Mother to remain one of H.P.J.'s joint managing conservators and cites Texas Family Code section 153.004, entitled "History of Domestic Violence or Sexual Abuse," which states:

(a) In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force, or evidence of sexual abuse, by a party directed against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

(b) The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, physical or sexual abuse by one parent directed against the other parent, a spouse, or a child . . . .

Tex. Fam. Code Ann. § 153.004 (Vernon Supp. 2018). Asserting that Mother abused and injured Father and H.P.J., Father contends that "credible evidence of a history of pattern of physical abuse" was presented, preventing Mother from serving as H.P.J.'s joint managing conservator. Father supports his argument with reference to the allegations of child abuse and domestic violence discussed above.

When, as here, the trial court is the factfinder, it is the sole judge of the weight and credibility of the evidence — if the trial court does not find "credible evidence" of a history of abuse, then section 153.004(b) does not prohibit the court from appointing joint managing conservators. *Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex. App.—Austin 2003, no pet.); *see also Matter of Marriage of Harrison*, No. 14-15-00430-CV, 2018 WL 2926268, at *19 (Tex. App.—Houston [14th Dist.] June 12, 2018, no pet. h.); *In re C.Y.C.*, No. 14-11-00341-CV, 2012 WL 3223674, at *5 (Tex. App.—Houston [14th Dist.] Aug. 9, 2012, pet. denied) (mem. op.)

Father's allegations of child abuse focus on the four incidents discussed above: (1) Mother allegedly held H.P.J. on the floor and forcefully brushed his teeth; (2) Mother allegedly carried H.P.J. by the wrists and "threw him against a wall;" (3) H.P.J. received seven stitches on his head while he was in Mother's care; and (4) H.P.J. sustained "cut[s] or burns on his torso." Mother denied intentionally

injuring H.P.J. and testified that H.P.J.'s injuries were caused by accidents and treated appropriately. Resolving this conflicting evidence and its attendant credibility determinations, the trial court reasonably could have concluded that this evidence did not establish a "history or pattern of past or present" child abuse. *See* Tex. Fam. Code Ann. § 153.004; *see also Matter of Marriage of Harrison*, 2018 WL 2926268, at *19-22; *In re C.Y.C.*, 2012 WL 3223674, at *4-7; *Lowth v. Lowth*, No. 14-03-00061-CV, 2003 WL 22996939, at *5-6 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, pet. denied) (mem. op.).

Father's allegations of domestic abuse focus on the three incidents discussed above: (1) Mother allegedly "slam[med] [Father] in the gate;" (2) Mother allegedly broke into Father's residence, trashed his home office, yelled at him, and wrote "LOSER" on his chest; and (3) Mother allegedly "physically attacked [Father] from behind." Mother disputed these allegations and provided further testimony regarding the "volatile" nature of her and Father's relationship. Because of this conflicting evidence, nothing in the record undisputedly shows a history or pattern of violence. *See Lowth*, 2003 WL 22996939, at *6. As with Father's allegations of child abuse, the trial court reasonably could have concluded that this evidence was not credible or did not establish a "history or pattern of past or present" abuse. *See* Tex. Fam. Code Ann. § 153.004; *see also Matter of Marriage of Harrison*, 2018 WL 2926268, at *19-22; *In re C.Y.C.*, 2012 WL 3223674, at *4-7; *Lowth*, 2003 WL 22996939, at *5-6.

We overrule Father's eighth issue.

## III. Father's Possession Order

In his final issue, Father asserts that the trial court abused its discretion by failing to render a possession order in his favor. Father relies on Texas Family Code sections 153.004(d) and (d-1), which limit a parent's access to a child if the

23

trial court finds by a preponderance of the evidence that "there is a history or pattern of committing family violence." *See* Tex. Fam. Code Ann. § 153.004(d), (d-1). Father summarily asserts that he "established that [Mother] has a history or pattern of family violence."

Father's argument on this point does not reference any incidents or allegations other than those discussed above. As we have noted several times, the evidence and testimony addressing these allegations conflicts. In resolving these conflicts, the trial court was vested with broad discretion, and we will not substitute our judgment for that of the trial court. *See In re J.R.P.*, 526 S.W.3d at 778. Because of the conflicting evidence, the trial court reasonably could have concluded that the evidence did not establish "a history or pattern of . . . family violence." *See* Tex. Fam. Code Ann. § 153.004(d); *see also Matter of Marriage of Harrison*, 2018 WL 2926268, at *19-22; *In re C.Y.C.*, 2012 WL 3223674, at *4-7; *Lowth*, 2003 WL 22996939, at *5-6.

We overrule Father's ninth issue.

## CONCLUSION

We overrule Father's issues and affirm the trial court's June 9, 2017 final judgment.

/s/    Tracy Christopher
        Justice

Panel consists of Chief Justice Frost and Justices Christopher and Zimmerer.