

# NUMBER 13-24-00070-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF T.M.B. AND I.B., CHILDREN

## ON APPEAL FROM THE 27TH DISTRICT COURT
## OF LAMPASAS COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Justices Silva, Peña, and Fonseca
### Memorandum Opinion by Justice Fonseca

Appellant Melissa Lanphear challenges two judgments in a suit affecting the parent-child relationship. Among other things, the judgments denied Lanphear's petition to reduce her child support obligation, awarded appellee Stephen Bussell a $13,800 judgment against Lanphear for overpaid spousal maintenance, and ordered that Lanphear's visitation with the parties' two children be supervised and only at dates and times chosen by Bussell.

Lanphear argues by three issues and multiple sub-issues that: (1) the trial court's

findings of fact were supported by legally and factually insufficient evidence; (2) the trial court incorrectly interpreted and applied the spousal maintenance statute; and (3) the trial court lacked the "authority to enter two final judgments." We affirm in part, reverse and render in part, and reverse and remand in part.[1]

## I. BACKGROUND

Lanphear and Bussell were divorced in 2020. The final decree named both parties as joint managing conservators of their children, T.M.B. and I.B., who were born in 2006 and 2013, respectively. Bussell was granted the exclusive rights to designate the children's primary residence within the continental United States and to make decisions concerning their education, and Lanphear was granted standard visitation rights. The decree contained detailed provisions regarding transfer of possession of the children and provided that the parties would split travel expenses evenly. Finally, the decree directed Bussell to pay $2,300 per month in spousal maintenance for thirty months beginning on March 1, 2020, and it directed Lanphear to pay $890 per month in child support, with the obligation reduced to $712 per month if one child reaches the age of eighteen, marries, dies, or begins active military service.[2]

In February 2021, Bussell filed a petition to terminate his spousal maintenance obligation on grounds that Lanphear "was residing in the same abode as a person [with] whom she is having a dating or romantic relationship." *See* TEX. FAM. CODE ANN. § 8.056(b). One year later, Lanphear filed a counterpetition requesting reduction of her

---

[1] This appeal was transferred from the Third Court of Appeals in Austin pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

[2] The decree did not state that the child support amount varied from the amount computed by applying the guidelines under Texas Family Code § 154.125, nor did it contain the findings which would be required in that situation under § 154.130. *See* TEX. FAM. CODE ANN. §§ 154.125, .130.

child support obligation. In April 2022, Bussell filed an amended petition adding a request to modify the divorce decree to require that Lanphear's visits with the children be supervised. In support of this request, Bussell alleged that, since the divorce, Lanphear had been in dating relationships with three different men with criminal records.

A hearing on the motions was held on March 22, 2023. On November 27, 2023, the trial court signed a judgment awarding $13,800 to Bussell, representing the spousal maintenance payments he made from July 2021 through December 2021, during which time Lanphear "cohabitated with a romantic partner."[3] The judgment states that Lanphear "shall pay [Bussell] $13,800.00 in accordance with this Order on or before 12/29/2023."

That same day, the trial court entered "Findings Pursuant to Rule [sic] 154.130 Texas Family Code" purporting to explain why Lanphear's child support obligation exceeded the statutory guideline amount. *See id.* § 154.130.

The trial court then signed a second judgment on November 29, 2023, denying Lanphear's request to reduce her child support obligation and granting Bussell's request to modify visitation. The judgment states that Lanphear's visitation with the children "shall be continuously supervised" by Bussell "or an entity or person chosen by" Bussell and shall be "on the days and times established by" Bussell. It further states that Lanphear "shall pay all costs to go to wherever the children reside to exercise her supervised visitation, or alternatively shall pay all costs to bring the children to her in order to exercise her supervised visitation."

On January 3, 2024, the trial court signed two sets of findings of fact and

---

[3] As Lanphear notes, the regular spousal maintenance payments had already terminated pursuant to the terms of the divorce decree by the time the trial court held the hearing in 2023.

conclusions of law, one pertaining to spousal maintenance and the other pertaining to child support and visitation. As to spousal maintenance, the trial court found in part that "[Lanphear] cohabited with a person with a romantic relationship [sic] in a permanent place of abode on a continuing basis" from July to December 2021 and that her "concealment of that fact resulted in an overpayment by [Bussell] of spousal maintenance in the amount of $13,800." The findings and conclusions as to child support included the following:

3.      The net resources of [Lanphear] per month are more than $1[,]250 currently.

4.      The net resources of [Lanphear] per month will increase shortly when she begins to draw her share of [Bussell]'s military retirement.

5.      The percentage applied to [Lanphear's] net resources would be twenty five percent.

6.      [Lanphear] was awarded maintenance in an amount that would have permitted her to obtain the further education and license which she previously testified that she needed to earn substantial income.

7.      Contrary to her previous testimony before the court in the divorce proceeding . . . regarding the necessity of further education, [Lanphear] did not obtain any further education to obtain the necessary license which would have significantly increased her earning capacity.

8.      [Lanphear] was awarded as property and maintenance by this court in the previous divorce sufficient funds so she would not have to work to complete the 30 college hours needed to complete her degree and obtain her license.

. . . .

15.     [Lanphear] is voluntarily underemployed through her complete lack of effort and expense to obtain the education and license that she needed to significantly increase her earning through employment.

16.     Child support should be set based on the representations made by [Lanphear] to induce this court to enter its previous order.

17.     Child support should be set based on what [Lanphear] represented

4

she would be capable of earning and on which the award to her in the divorce decree was based.

18. The child support ordered paid by [Lanphear] should not be reduced because the evidence rebuts the presumption that application of the guidelines is in the best interest of the children and that evidence justifies a variation from the guidelines.

19. [Lanphear] only obtained employment shortly prior to filing her Petition to Modify Parent Child Relationship requesting to reduce her child support[;] otherwise she had been unemployed for most of the time since the parties were divorced.

The finding and conclusions as to visitation included:

24. [Lanphear] has had relationships with various men since the divorce was granted.

25. [Lanphear] was involved with one man to whom the children were exposed and against whom she obtained a protective order.

26. [Lanphear] lived with a man who had a serious drinking problem to whom the children were exposed.

27. [Lanphear] made poor choices about the type of persons to whom the children were exposed.

28. It is in the best interest of the children that [Lanphear's] possession of the children be supervised and an order varying from the Standard Possession Order be entered because she has a history or pattern of reckless decision making and conduct risks which endangering [sic] the children's physical health or emotional welfare.

. . . .

30. There has been a substantial and material change of [Lanphear's] condition since the entry of the decree of divorce based on her behavior and choices which affect the children.

This appeal followed.

## II.   CHILD SUPPORT

### A.   Findings Under Family Code § 154.130

By part of her first issue, Lanphear argues that the judgment should be reversed

because the trial court failed to enter findings under family code § 154.130. *See Hanna*

5

*v. Hanna*, 813 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding that a trial court's failure to make findings under the predecessor statute upon proper request constitutes reversible error).

Child support is generally determined according to guidelines set forth in the family code, which are based on the number of children and the net resources of the obligor. *See* TEX. FAM. CODE ANN. §§ 154.125, .129. Family code § 154.130 states that, "in rendering an order of child support" that deviates from the guidelines, upon timely request the trial court must "state the following in the child support order":

"(1)    the net resources of the obligor per month are $_____;

"(2)    the net resources of the obligee per month are $_____;

"(3)    the percentage applied to the obligor's net resources for child support is _____%; and

"(4)    if applicable, the specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under [§] 154.125 or 154.129, as applicable."

*Id.* § 154.130 (quotation marks and blanks in original). Lanphear contends that the trial court's November 27, 2023 "Findings Pursuant to Rule [sic] 154.130 Texas Family Code" failed to comply with the statute because they did not state an exact dollar amount for her monthly net resources. Instead, similar to the subsequent findings and conclusions, these findings stated that "[t]he net resources of the obligor per month are more than $1[,]250 currently according to her testimony, but will increase shortly when she begins to draw her share of [Bussell]'s military retirement."

We disagree that the trial court erred in this regard. As Bussell argues, § 154.130 findings were not required in this case because the trial court denied Lamphear's request to modify child support; therefore, neither judgment on appeal constitutes an "order of

6

child support" as the term is used in the statute. *See Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 664 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("The trial court did not grant [appellant]'s motion to modify child support; therefore, the court was not required to make the specific statutory findings required under [f]amily [c]ode [§] 154.130."); *In re D.S.*, 76 S.W.3d 512, 522 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (same, noting that findings under § 154.130 "are only required when the amount of child support *ordered* or *rendered* by the court varies from the guidelines"); *In re Striegler*, 915 S.W.2d 629, 635 (Tex. App.—Amarillo 1996, writ denied) (declining to extend the requirements of the predecessor statute "to orders which deny motions to modify child support and, effectively, order payment of child support as set out in a prior order").

## B.    Petition for Modification

By the next part of her first issue, Lanphear challenges the sufficiency of the evidence to support the trial court's denial of her petition to modify child support. She specifically challenges the trial court's findings that her net resources are "more than $1[,]250" and "will increase shortly when she begins to draw her share of [Bussell]'s military retirement." She further disputes the trial court's conclusion that child support "should be set based on what [she] represented she would be capable of earning" at the divorce trial.

### 1.    Standard of Review

Trial courts have broad discretion in setting child support payments and modifying those payments. *In re K.M.B.*, 606 S.W.3d 889, 894 (Tex. App.—Dallas 2020, no pet.); *see Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) ("A trial court has discretion to set child support within the parameters provided by the Texas Family Code."). We review a trial

7

court's decision on a petition to modify child support for abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re D.L.N.*, 609 S.W.3d 237, 243 (Tex. App.—Texarkana 2020, no pet.); *In re J.R.D.*, 169 S.W.3d 740, 742–43 (Tex. App.—Austin 2005, pet. denied). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Worford*, 801 S.W.2d at 109. A trial court does not abuse its discretion when some evidence of a substantive and probative character supports the trial court's order. *Rumscheidt*, 362 S.W.3d at 667. Under this standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. *In re J.R.D.*, 169 S.W.3d at 742–43.

### 2. Applicable Law

"The court shall calculate net resources for the purpose of determining child support liability" under the family code guidelines. TEX. FAM. CODE ANN. § 154.062(a). The amount of child support established by the guidelines "is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child." *Id.* § 154.122(a). However, the court may order child support that deviates from the guidelines "if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines." *Id.* § 154.123(a). The "paramount guiding principle" in a child support decision is the best interest of the child. *Iliff*, 339 S.W.3d at 81.

A trial court may modify a child support order if:

(1)     the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of:

    (A)     the date of the order's rendition; or

8

> > (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; or
>
> (2) it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.

TEX. FAM. CODE ANN. § 156.401(a).

### 3. Evidence

As noted, the divorce decree set child support at $890 per month, with the monthly payments reduced to $712 if one child reaches the age of eighteen, marries, dies, or begins active military service. *See id.* § 154.006(a). Lanphear argued that her circumstances materially and substantially changed since the decree because her spousal maintenance payments terminated in August 2022. *See id.*[4] Bussell did not dispute that there was a material and substantial change in Lanphear's circumstances for that reason.

At the March 23, 2023 hearing, Lanphear conceded that she stated at the divorce trial that she intended to "go back to college" and obtain a certificate or license in American Sign Language; however, she did not do so. She agreed that she received $55,000 from a savings account in 2020 as part of the divorce property division, and when combined with the maintenance payments, she had income of over $100,000 that year. Later, she sold Texas real property awarded to her in the divorce for around $84,000. She agreed that she did not use any of the sales proceeds or other income to finish her

---

[4] The judgments on appeal were rendered more than three years after the divorce decree. *See* TEX. FAM. CODE ANN. § 156.401(a)(2). However, Lanphear's petition to modify was filed and the hearing took place within three years of the decree. Lanphear does not dispute that she had the burden to show a material and substantial change in circumstances in this case. *See In re D.S.*, 76 S.W.3d 512, 520 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (providing that the party seeking modification of child support has the burden to show a material and substantial change in circumstances).

education or obtain a license in sign language; instead, she spent most of it on "fixing" a home she purchased in Oklahoma. When asked whether she was aware that she "could make about $50,000 if [she] had [her] bachelor's degree and [she] had the license in American Sign Language," Lanphear replied: "Maybe could've had COVID not hit." She explained that attending college remotely "wasn't for [her]." She conceded she did not pursue attending college since the pandemic ended.

Lanphear testified that following the divorce, she moved to Kentucky to be near the children, who were living there with Bussell where he was stationed. While in Kentucky, she worked night shifts at a convenience store and earned around $11.50 per hour. After the spousal maintenance payments stopped in August 2022, she moved to Oklahoma. Lanphear testified that since then, she has been working 36.5 hours per week, on a twelve-month contract, as a teacher's aide or paraprofessional for special needs children. A paystub entered into evidence showed that, at the time of the hearing, she was earning $1,234.34 gross income per month with $136.47 withheld for state and federal income and payroll taxes. Lanphear agreed that she also worked as a teacher's aide at the time of the divorce. She testified that the most she has ever earned was $25 per hour as an interpreter for a deaf child in Lampasas.

Bussell testified that he is a lieutenant colonel in the United States Army and that he has been stationed in Anchorage, Alaska since April 2021. He stated that at the time the spousal maintenance payments were set, he was earning around $8,000 in net monthly income. He explained that he has been in the Army for thirty-two years, including twenty-seven years on active duty. He agreed that he "anticipate[d] retiring" to somewhere in the continental United States, but did not state when that would happen.

On cross-examination, he stated that he was "fixing to move this summer" to somewhere "in the lower 48."

### 4.    Intentional Underemployment

According to Lanphear's paystub, she had $1,097.87 in monthly net resources at the time of the hearing. *See id.* § 154.062(a)(1) (providing that "[r]esources" include "100 percent of all wage and salary income"), (d)(1–3) (providing that "net resources" excludes social security taxes, federal income tax, and state income tax). For that level of net resources, the guidelines child support amount for two eligible children would be $274.47 per month, or twenty-five percent of her net resources. *See id.* § 154.125(b).[5] For one eligible child, the guidelines support payment would be $219.57 per month, or twenty percent of net resources. *See id.*[6]

However, "[i]f the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor." *Id.* § 154.066(a); *see Iliff*, 339 S.W.3d at 81 ("A parent who is qualified to obtain gainful employment cannot evade his or her child support obligation by voluntarily remaining unemployed or underemployed."). That an obligor is failing to maximize her potential is not enough to support a finding of intentional underemployment. *Trumbull v. Trumbull*, 397 S.W.3d 317, 321 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The Texas Supreme Court has

---

[5] The percentages listed in family code § 154.125(b) apply only to an obligor with monthly net resources of more than $1,000 but less than a maximum amount most recently published by the Child Support Division of the Office of the Attorney General. *See* TEX. FAM. CODE ANN. § 154.125(b). It is undisputed that Lanphear's monthly net resources fall within this range.

[6] Lanphear challenges the trial court's finding that "[t]he percentage applied to the net resources would be 25%" under the guidelines. However, her argument concerns only the calculation of her net resources and whether deviation from the guidelines was appropriate, not the applicable percentage under family code § 154.125.

explained:

> The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings. Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed. The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal.
>
> Trial courts should be cautious of setting child support based on earning potential in every case where an obligor makes less money than he or she has in the past. . . . We are wary of the proposition . . . that, other things being equal, receiving more child support will always be in the best interest of the child. Although some financial resources are indispensable to raising and providing for a child, the financial analysis will often not be the end of the court's consideration. A court properly considers the obligor's proffered rebuttal evidence of the reasons for an obligor's intentional unemployment or underemployment. This includes such laudable intentions by obligors who alter their employment situations to spend more time with their children, to live closer to their children in order to attend their events and be more involved in their lives, or to provide their children with better health benefits. Other objectives are also factors, such as whether an obligor alters his or her employment situation to start a new business, to gain further education, to become a public servant, or to address health needs. An active but unfruitful pursuit of employment may also be relevant to the court's child support determination, as well as economic conditions that legitimately preclude full employment. But, we are mindful that such explanations are not always sincere, and the judge as fact finder has latitude to consider the testimony and evidence to make the necessary determinations. Such discretion must be exercised within the limits set by the Texas Family Code, particularly Chapter 154 including the child support guidelines, and should always focus on the best interest of the child. To facilitate appellate review and to encourage consistency in the exercise of this discretion across the state, the trial court must make a finding of intentional unemployment or underemployment and its decision to base child support on earnings potential rather than actual earnings must be supported by the record.

*Iliff*, 339 S.W.3d at 82 (footnotes and citations omitted).

Here, the trial court found that Lanphear was "voluntarily underemployed through her complete lack of effort and expense to obtain the education and license" which she previously indicated she would seek. We conclude that this particular finding is supported

12

by the evidence adduced at the March 23, 2023 hearing.[7] Lanphear conceded that she previously represented to the divorce court that she intended to complete her bachelor's degree and obtain a certification in sign language, both of which would increase her earning potential. She does not dispute that the property division, child support, and spousal maintenance provisions in the decree were based in part on those representations. And Lanphear appeared to agree at the hearing that she "could make" $50,000 annually if she had obtained those credentials. It is undisputed that she failed to do so, and the sole reason she offered for that failure—COVID—does not account for the years since the pandemic. Moreover, there was no evidence that Lanphear could not

---

[7] In his brief, Bussell argues that the trial court's "knowledge" of the divorce proceedings "was sufficient for the court to render its final order." He contends that the trial court "was not required to ignore its own records and hearings and the previous requests of [Lanphear] which he granted and which she squandered." Even if that were true, our review is limited to what is in the appellate record, *see, e.g.*, *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied), and the record does not contain any transcript of the divorce trial, nor does it contain any documents from that case other than the final decree.

We note that "a trial court may take judicial notice of its own records in a case involving the same subject matter between the same, or practically the same, parties." *In re Shifflet*, 462 S.W.3d 528, 539 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding) (citing *Gardner v. Martin*, 345 S.W.2d 274, 276 (Tex. 1961)); *see In re R.S.D.*, 446 S.W.3d 816, 820 n.4 (Tex. App.—San Antonio 2014, no pet.) ("A trial court may take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed."). But though "a court may take judicial notice that a pleading has been filed in the cause or that it signed an order," it "may not take judicial notice of the *truth* of allegations in its records." *In re R.S.D.*, 446 S.W.3d at 820 n.4. And, in order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence. *See In re M.C.G.*, 329 S.W.3d 674, 675 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Augillard v. Madura*, 257 S.W.3d 494, 503 n.14 (Tex. App.—Austin 2008, no pet.). "A trial judge may not even judicially notice testimony that was given at a temporary hearing in a family law case at a subsequent hearing in the same cause without admitting the prior testimony into evidence." *Davis v. State*, 293 S.W.3d 794, 797–98 (Tex. App.—Waco 2009, no pet.) (noting that "[t]he trial judge's own memory of what the witness may have said at the prior proceeding is insufficient to substitute for an accurate and properly authenticated record of that testimony" and that "[a] fact is not capable of accurate and ready confirmation simply because a trial judge remembers that a witness testified to it in trial").

In this case, the trial court did not formally take judicial notice of any records or testimony from the divorce trial. To the extent it did so informally, that was improper because they were not entered into evidence in the modification proceedings. *See In re M.C.G.*, 329 S.W.3d at 675. Accordingly, in our analysis, we will consider only evidence which was adduced at the March 23, 2023 hearing. *See Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("When evidence is the subject of improper judicial notice, it amounts to no evidence.") (citing *Augillard*, 257 S.W.3d at 503 n.14).

have obtained those credentials remotely, even during the height of the pandemic. Finally, Lanphear testified that she has previously earned $25 per hour as an interpreter for a deaf child, even without additional education or certification.[8] This evidence satisfied Bussell's initial burden to show intentional underemployment. *See id.*

Lanphear did not offer any rebuttal evidence of the type contemplated in *Iliff*. She stated that she moved to Kentucky to be near the children, but that was not the reason for her underemployment at the time of the hearing. There was nothing indicating that Lanphear altered her employment situation to spend more time with the children, to start a new business, to obtain education, or to address health issues. *See id.* Instead, the evidence established that Lanphear moved to rural Oklahoma because she could afford property there and her parents lived nearby. There was no evidence of an "active but unfruitful pursuit of employment," *see id.*, nor was there evidence of any legitimate justification for Lanphear's failure to at least pursue the education and certification which she acknowledged she planned to obtain.

On this record, the court was within its discretion to determine that Lanphear's actual income was "significantly less" than what she could earn due to intentional underemployment. *See* TEX. FAM. CODE ANN. § 154.066(a). The evidence supported a finding that Lanphear had an "earning potential" of $50,000 per year, or $4,166.67 in monthly gross income. Assuming ordinary federal income and payroll tax and Oklahoma state income tax, the monthly net resources based on Lanphear's earning potential would be $3,335.63. *See* TEX. FAM. CODE ANN. § 154.062; *see also Pay Taxes*, Oklahoma Tax

---

[8] Assuming a forty-hour work week, $25 per hour equates to $4,333.33 per month, or $52,000 annually.

Commission, https://oklahoma.gov/tax/individuals/pay-taxes.html (last visited Apr. 8, 2025). Pursuant to the guidelines, this entails a monthly child support amount of $833.91 for two eligible children or $667.13 for one eligible child. *See* TEX. FAM. CODE ANN. § 154.125(b).

We overrule this part of Lanphear's first issue.

### 5. Retirement Benefits

Lanphear next argues by this issue that the trial court erred by finding that her monthly net resources "will increase shortly when she begins to draw her share of [Bussell]'s military retirement." Bussell appears to concede that, although he testified that he intended to retire, there was no evidence that he intended to do so "shortly," nor was there any evidence indicating how Lanphear's monthly net resources would be affected in that event.

We agree with Lanphear that this fact finding was supported by legally and factually insufficient evidence. Accordingly, the trial court erred to the extent it took this finding into consideration in denying Lanphear's motion to modify child support. We sustain this part of Lanphear's first issue.

### 6. Deviation From Guidelines

Lanphear further argues by her first issue that the trial court erred by ordering an amount of child support that deviates from the guidelines amount. In determining whether a deviation from the guidelines amount is appropriate, the court "shall consider evidence of all relevant factors," including in relevant part:

(1)    the age and needs of the child;

(2)    the ability of the parents to contribute to the support of the child;

(3)    any financial resources available for the support of the child;

15

. . . .

(8)    the amount of alimony or spousal maintenance actually and currently being paid or received by a party;

(9)    the expenses for a son or daughter for education beyond secondary school;

. . . .

(13)    special or extraordinary educational, health care, or other expenses of the parties or of the child;

(14)    the cost of travel in order to exercise possession of and access to a child; [and]

. . . .

(17)    any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.

*Id.* § 154.123(b).

In her argument regarding this sub-issue, Lanphear principally complains about the sufficiency of the evidence to show her earning potential. As set forth above in our discussion of the trial court's intentional underemployment finding, we find the evidence was sufficient to allow the trial court to exercise its discretion in this regard. We note that the monthly amount of child support ordered by the trial court ($870 for two children, $720 for one) only marginally exceeds the guidelines amount as applied to Lanphear's earning potential ($833.91 for two children, $667.13 for one). *See supra* part II.B.4. Intentional underemployment may arguably be considered in determining whether to deviate from the guidelines amount. *See id.* § 154.123(b)(2). Nevertheless, the trial court was required to consider all of the factors listed in § 154.123(b) in determining whether to deviate from the guidelines amount. *See id.* § 154.123(b). Neither party addresses those factors in their briefs.

A review of the factors militates against an upward deviation from the guidelines

16

amount. The child support amount in the decree was apparently based on an assumption that Lanphear would be receiving $2,300 per month spousal maintenance in perpetuity, but it is undisputed that those payments terminated by their own terms after thirty months. *See id.* § 154.123(b)(8). Further, since the decree, Bussell has moved with the children to Alaska—and, unlike the decree, the orders on appeal made Lanphear responsible for all visitation costs. *See id.* § 154.123(b)(14). Unfortunately, there was no evidence adduced at the hearing regarding the children's medical, educational, or other needs, such as would have allowed the court to more accurately determine whether a deviation from the guidelines was in their best interests in this case. *See id.* § 154.123(b)(1), (9), (13), (17).

On this record, deviation is not in the best interests of the children, and the trial court abused its discretion in finding otherwise. *See Iliff*, 339 S.W.3d at 81. Accordingly, we reverse the trial court's child support judgment and render judgment that Lanphear's monthly child support obligation shall be at the amount supported by the evidence under the guidelines as applied to her earning potential—i.e., $833.91 for two eligible children or $667.13 for one eligible child. *See id.* §§ 154.066(a), .125(b). This part of Lanphear's first issue is sustained.

### III.    VISITATION

By the final part of her first issue, Lanphear argues the trial court erred by ordering her visitation with the children to be supervised, and only at dates and times as determined by Bussell.

### A.    Standard of Review and Applicable Law

The trial court is afforded great discretion when determining issues relating to

conservatorship, including visitation. *See Gardner v. Gardner*, 229 S.W.3d 747, 753–54 (Tex. App.—San Antonio 2007, no pet.); *Dennis v. Smith*, 962 S.W.2d 67, 68 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). To determine whether the trial court abused its discretion, we review the "evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *In re J.I.Z.*, 170 S.W.3d 881, 883 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). "[T]he trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). Thus, we "defer to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions." *Id.*

As with child support, a challenge to the sufficiency of the evidence to support a custody ruling is not a separate ground of error, but instead is a relevant factor to consider in assessing whether the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). To assess this factor, "we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion." *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.).

## B. Evidence

Lanphear testified that she met Anthony Laurie on Facebook and that she lived with him in Kentucky, though they had different bedrooms. She said they were friends

and the children were sometimes around him. Lanphear knew that Laurie had a DUI on his record but she denied that he was a "significant alcoholic" at the time she met him. That said, she conceded that Laurie died of cirrhosis five months after she moved in with him. Lanphear said Laurie was gay and she denied that she was in a romantic relationship with him. On cross-examination, she identified two photos posted on her Facebook page which depict her and Laurie together; I.B. also appears in one of the photos.

Lanphear conceded that since the divorce, she had a sexual relationship with Christopher Watkins for about six months, and after the relationship ended she obtained a protective order against Watkins because he "threatened [her] life." She said she "had to get" the protective order "because he was going to burn my house with me in it." She acknowledged that the children were around Watkins when they visited her. She conceded that she and Watkins flew to Alaska together to visit the children, and they occupied the same motel room while they were there. She also agreed that Watkins was at her home overnight "most" weekends. However, she denied that she ever cohabited with Watkins. On cross-examination, Lanphear identified two photos posted on Watkins's Facebook page which depicted her and Watkins together. She also identified a photo from Watkins's Facebook page showing I.B. embracing Watkins, with the caption stating: "She may not be mine by blood, but she has my heart!"

Lanphear testified that she dated Roy Glover for "a month or so." She denied that Glover had a criminal record. She stated that she "[n]ever" had a man stay in her room when her children were there. However, T.M.B. testified that Watkins stayed overnight at Lanphear's residence on multiple occasions while he and his sister were visiting.

According to Lanphear, visitation with the children "went great" when she lived in

Kentucky. She stated she moved to Oklahoma because Bussell "told [her] that he wasn't going to in fact retire like he said he was going to in court" but instead would be "moving, and he had three places that he thought they were going to go and they were all lower 48." Lanphear stated that, because Bussell and the children were not going to stay in Kentucky, she started looking for homes she could purchase using the resources she was awarded in the divorce, and she found one in Hominy, Oklahoma, a town of around 3,500 which was in driving distance of both her parents. Around the time she moved there, she found out that Bussell would be moving to Alaska. She said the children living with Bussell in Alaska has been "awful" for her relationship with them because of the time difference and travel expenses.

Bussell testified that, in June 2020, Lanphear told him that she was moving in with another man. He indicated that he hired a private investigator in October 2020 to learn more about Lanphear's cohabitant. He also acknowledged that there was an allegation that the parties' daughter I.B. was "sexually assaulted" while she was in his care in Kentucky, and she underwent an examination. He said that, as far as he knows, the case is "still open."[9]

## C. Analysis

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002; *In re Marriage of Christensen*, 570 S.W.3d 933, 938 (Tex. App.—Texarkana 2019, no pet.). Factors considered in the best interest inquiry include: (1) the desires of the children; (2) the emotional and physical needs of the

---

[9] The record does not reflect the identity of the alleged assailant.

children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). "Proof of best interest is not limited to these factors, nor do all factors always apply in every case." *In re S.A.H.*, 420 S.W.3d 911, 926 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The trial court's ruling was based entirely on the risk of danger to the children arising from Lanphear's choice of male associates. In explaining its decision following the March 23, 2023 hearing, the trial court emphasized that Lanphear "made bad choices in men." The court ultimately found that she has "a history or pattern of reckless decision making and conduct [which risks] endangering the children[']s physical health or emotional welfare." The record supports this finding. It shows that Lanphear applied for a protective order against Watkins in Oklahoma on January 10, 2022. In her sworn application, Lanphear averred that Watkins "has engaged in a pattern of stalking and harassment of [Lanphear] and her relatives and friends." She also alleged that Watkins "stole [her] phone" and "stole [her] gun." At the modification hearing, Lanphear testified that Watkins threatened her life and "was going to burn my house with me in it." T.M.B. testified that Watkins stayed in Lanphear's house while he and his sister visited.

Lanphear notes that "[t]he terms of an order that . . . imposes restrictions or

21

limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." TEX. FAM. CODE ANN. § 153.193. She also correctly notes that there was no evidence the children were actually emotionally or physically harmed, by herself or anyone else, at any point while they were in her custody. However, considering the evidence in the light most favorable to its decision, *see In re J.I.Z.*, 170 S.W.3d at 883, we conclude the trial court was within its discretion to determine that supervised visitation is the minimum restriction necessary to protect the children's best interests. Lanphear suggests that the trial court could have simply ordered her not to allow the children to have access to any male companion, but the trial court was in the best position to evaluate the credibility and demeanor of the parties, *see In re P.M.G.*, 405 S.W.3d at 410, and it clearly did not believe Lanphear's representations regarding her intention or ability to comply with such an order. The court could have reasonably found that there was a risk of significant emotional and physical danger to the children if Lanphear's visits were unsupervised.[10] *See Holley*, 544 S.W.2d at 371–72.

Lanphear additionally contends that the trial court erred by ordering her supervised visits with the children to be "on the days and times established by [Bussell]." She argues that this ruling effectively terminates her parental rights, is improperly vague, and is contrary to public policy. We agree.

"A trial court may not give one parent the unbridled discretion, unenforceable by contempt, to decide whether the other parent may have access to, or possession of, [their]

---

[10] Lanphear observes that I.B. was allegedly sexually assaulted while she was in Bussell's possession. However, she does not cite any authority indicating that this is a factor which may be considered in determining whether it is in the children's best interests that their visits with *her* be supervised. Notably, though this allegation is obviously disturbing, Lanphear has never requested a modification of the divorce decree with respect to Bussell's possession or access to the children, and there is nothing in the record that would substantiate a finding on the veracity of the allegation.

children." *In re A.L.E.*, 279 S.W.3d at 432; *see Roosth v. Roosth*, 889 S.W.2d 445, 452 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("This absolute discretion and the lack of enforceability [by contempt] is effectively a denial of appellant's right to visitation with his children."); *see also Brandon v. Rudisel*, 586 S.W.3d 94, 107 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *In re A.P.S.*, 54 S.W.3d 493, 498–99 (Tex. App.—Texarkana 2001, no pet.). "Thus, when a court places restrictions or conditions on a conservator's possession rights, the court must specifically define those terms in its decree." *In re A.L.E.*, 279 S.W.3d at 432. "The judgment must state, in clear and unambiguous language, what is required for the conservator to comply, and the terms must be specific enough to permit the conservator to enforce the judgment by contempt." *Id.* (citing *Roosth*, 889 S.W.2d at 452). Bussell does not dispute this authority or otherwise respond to Lanphear's argument in this regard.

We conclude the trial court abused its discretion by ordering Lanphear's visits with the children to be only "on the days and times established by [Bussell]." The evidence did not support a finding that this restriction was for good cause or was necessary to protect the children's best interests. *See* TEX. FAM. CODE ANN. § 153.193; *see also id.* § 153.006(c) ("The court shall specify and expressly state in the order the times and conditions for possession of or access to the child, unless a party shows good cause why specific orders would not be in the best interest of the child."). We sustain this part of Lanphear's first issue.

## IV.    SPOUSAL MAINTENANCE

By her second issue, Lanphear contends the trial court lacked the authority to (1) enter judgment against her for alleged maintenance overpayments received prior to

the hearing, or (2) direct that judgment to be paid by a date certain.

As noted, the divorce decree directed Bussell to pay $2,300 in spousal maintenance for thirty months, beginning on March 1, 2020. It is undisputed that Bussell timely made all of those payments, and the last payment was made on August 1, 2022. In his original petition for modification filed in February 2021, he asked the trial court to "terminate" his maintenance obligation, under family code § 8.056(b), on grounds that Lanphear was "residing in the same abode as a person [with] whom she is having a dating or romantic relationship." He also alleged that his obligation should be terminated because Lanphear "failed to enroll in school as she indicated to the Court."

Section 8.056(b) provides: "After a hearing, the court shall order the termination of the maintenance obligation if the court finds that the obligee cohabits with another person with whom the obligee has a dating or romantic relationship in a permanent place of abode on a continuing basis." *Id.* § 8.056(b). In its November 27, 2023 judgment, the court found that Lanphear "cohabited with a romantic partner for a period of six months from July 2021 through December 2021, and that her spousal maintenance should be terminated for that period." The trial court also found that Lanphear "sought to conceal her cohabitation with a rom[a]ntic partner from [Bussell]." Accordingly, the trial court ordered Lanphear to reimburse Bussell for the $13,800 in payments he made during that time.

Lanphear argues that the trial court erred by purporting to "terminate" spousal maintenance retroactively. The parties cite no case law interpreting the statute. Having reviewed its unambiguous plain language, we agree with Lanphear. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) ("We construe a statute's

24

words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd or nonsensical results."). Section 8.056(b)—the only statutory authority cited by Bussell in his pleadings or on appeal—allows a trial court to terminate previously-ordered maintenance payments only "[a]fter a hearing," and the hearing in this case did not take place until after all ordered payments had been made. *See* TEX. FAM. CODE ANN. § 8.056(b). The trial court noted in its judgment and findings that "it was not [Bussell's] fault that the court was unable to timely set his petition" for a hearing. That may be true, but the court was not at liberty to fashion a remedy which is unauthorized by the statute or any other legal authority. *See Iliff*, 339 S.W.3d at 80–81 ("We have no right to engraft upon the statute any conditions or provisions not placed there by the legislature."); *Lee v. City of Houston*, 807 S.W.2d 290, 294–95 (Tex. 1991) (noting that "[a] court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute").

In any event, § 8.056(c) provides that "[t]ermination of the maintenance obligation [under § 8.056(b)] does not terminate the obligation to pay any maintenance that accrued before the date of termination." *Id.* § 8.056(c). This provision would be redundant and nonsensical if the trial court was permitted to declare any date in the past to be "the date of termination." *See Ross*, 462 S.W.3d at 501; *Old Am. Cnty. Mut. Fire Ins. v. Sanchez*, 149 S.W.3d 111, 115 (Tex. 2004) (noting that "we presume that every word of a statute has been included or excluded for a reason"). The plain and common meaning of "the date of termination" is the date that the trial court renders the termination order—here, November 27, 2023—and according to the statute, such an order cannot affect payments

which accrued before that date. *See* TEX. FAM. CODE ANN. § 8.056(b), (c).[11] Nothing in the statutory framework for termination of spousal maintenance grants the trial court discretion to set separate periods of support or breaks in an obligation—the obligation is either terminated or it is not.

We conclude the trial court erred by rendering judgment for $13,800 against Lanphear based on alleged spousal maintenance overpayments.[12] We sustain Lanphear's second issue.

## V. MULTIPLE FINAL JUDGMENTS

By her third issue, Lanphear contends that the trial court lacked "authority to enter two final judgments" on November 27 and 29, 2023. She contends that the November 27, 2023 order "was interlocutory when it was not incorporated in the final judgment signed two days later" and "should be vacated." *See* TEX. R. CIV. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law.").

The November 27 order awarded a $13,800 judgment to Bussell and stated that "all relief requested [in Bussell's petition] and not specifically granted by the Court above is DENIED." The November 29 order granted Bussell's request to modify visitation and denied Lanphear's request to modify child support. We have already held that the trial court's retroactive termination of spousal maintenance was erroneous under family code § 8.065. *See supra* part IV. Therefore, Lanphear's request to vacate the November 27

---

[11] To the extent Bussell contends the judgment was proper on any alternative grounds such as fraud, the trial court was unable to award judgment on that basis because no such grounds were pleaded or tried by consent. *See* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings . . . ."); *see also* TEX. R. CIV. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). We note that Bussell did not allege in his pleadings that Lanphear sought to conceal her relationships with men.

[12] In light of this conclusion, we do not address Lanphear's argument that the trial court erred by ordering the judgment to be paid by a date certain. *See* TEX. R. APP. P. 47.1.

order is moot. We overrule her third issue for that reason.

## VI.  CONCLUSION

The trial court's judgments are reversed insofar as they: (1) award Bussell child support in an amount exceeding the amount prescribed by the guidelines; (2) provide that Lanphear's visits with the children shall be only "on the days and times established by [Bussell]"; and (3) award Bussell a $13,800 judgment for alleged spousal maintenance overpayments.

We render judgment that Lanphear's monthly child support obligation is $833.91 for two eligible children or $667.13 for one eligible child. We also render judgment that Bussell take nothing by way of his claim for reimbursement of alleged spousal maintenance overpayments under Texas Family Code § 8.056(b).

The cause is remanded with instructions to render judgment providing that Lanphear shall have regular supervised visitation with the children in terms specific enough to allow her to enforce the judgment by contempt. *See In re A.L.E.*, 279 S.W.3d at 432.

The remainder of the judgment is affirmed.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
10th day of April, 2025.