

# NUMBER 13-24-00302-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

### IN THE INTEREST OF D.P.R., A CHILD

### ON APPEAL FROM THE COUNTY COURT AT LAW NO. 7
### OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Chief Justice Tijerina and Justices West and Fonseca
### Memorandum Opinion by Justice Fonseca

This appeal arises from judgments rendered in a suit affecting the parent-child relationship. Appellant David Q. Rogers, pro se, argues by one issue that the trial court abused its discretion by modifying possession and child support. We reverse and render.

### I. BACKGROUND

#### A. Mediated Settlement Agreement

Rogers and appellee Eve Robledo are the parents of D.P.R., who was born in 2019. On June 18, 2020, Robledo filed an original petition asking for both parents to be

named as joint managing conservators of the child, for her to be granted the exclusive right to designate the child's primary residence, for Rogers to be granted standard visitation rights, and for Rogers to be ordered to pay child support. Rogers filed an answer and counterpetition agreeing that the parties should be named joint managing conservators but requesting that he be granted the exclusive right to designate D.P.R.'s primary residence.

The record reflects that, in June of 2020, the parties entered into a "Mediated Settlement Agreement" (MSA) providing in relevant part that: (1) the parties agree to be joint managing conservators "with primary designation granted to mother and a geographic restriction of Hidalgo County for the residence of the child"; (2) Rogers shall pay $50 per month in child support, plus daycare expenses up to $130 per month and medical and dental insurance of $150 per month; and (3) the parties "will follow a 2-2-3 schedule" for possession of the child. The MSA further stated "THIS AGREEMENT SHALL BE BINDING ON THE PARTIES AND SHALL NOT BE SUBJECT TO REVOCATION." *See* TEX. FAM. CODE ANN. § 153.0071(d). The parties and their attorneys signed the MSA on June 29, 2020, and the trial court signed it on July 7, 2020.

On July 14, 2020, the trial court executed an "Order in Suit Affecting the Parent-Child Relationship" consistent with the terms of the MSA.[1] The trial court signed a judgment nunc pro tunc on September 25, 2020, apparently to correct clerical errors.

## B. Petitions to Modify

On August 30, 2021, Robledo filed a petition to modify the 2020 orders to grant

---

[1] The order stated that "[t]he making of a record of testimony was waived by the parties with the consent of the Court."

her the exclusive right to designate D.P.R.'s primary residence and to make educational decisions for him, and to grant Rogers standard visitation.[2] That same day, Robledo filed a "Motion for Enforcement" asserting that "[she] was not advised of the child's medical appointments" and, for that reason, requesting that Rogers be held in contempt for "fail[ing] to comply" with the 2020 orders.

Two days later, Robledo filed an "Emergency Motion for Temporary Orders" claiming that Rogers had been arrested for "[r]acing on [h]ighway causing bodily injury" and requesting that she be named sole managing conservator and that Rogers's visitation rights be "limited." Rogers filed a response asserting that the emergency motion must fail because it was not accompanied by an affidavit as required by statute. *See* TEX. FAM. CODE ANN. § 156.006(b)(1) (noting that, while a motion for modification is pending, a trial court may not render temporary orders involving the right to designate a child's primary residence unless "the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development"), (b-1) (stating that a person who moves for temporary orders under subsection (b)(1) must file an affidavit attesting to the supporting facts).

On October 25, 2021, the trial court rendered temporary orders designating Robledo as temporary primary managing conservator and providing that Rogers shall have standard visitation rights.[3]

On March 25, 2022, Rogers filed a "Counterpetition to Modify Parent-Child Relationship" requesting that he be granted the exclusive right to designate D.P.R.'s

---

[2] As Rogers notes, Robledo's motion incorrectly stated that "[t]he order to be modified is not based on a mediated or collaborative law settlement agreement."

[3] This order does not appear in the appellate record.

3

primary residence. The counterpetition alleged in part that "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of the signing of the [MSA] on which the order to be modified is based." On May 19, 2022, Rogers filed a "Motion to Modify Temporary Orders" asserting that "[t]here have been at least fifteen (15) instances of observable physical injury to the child between November 1, 2021[,] to present" and that "[t]he child is experiencing extreme constipation and emotional outbursts since his visitation schedule with the father was changed in October 2021." He requested a "50/50 visitation schedule" instead.

## C.    Final Hearing

The trial court held a final hearing on the various pending motions on May 6, 2024, more than two years after they were filed. At the beginning of the hearing, Robledo's counsel explained that she was asking for Rogers to have "extended" standard visitation, and Rogers's counsel stated that he was non-suiting the counterpetition filed on March 25, 2022.

Robledo testified that D.P.R. was four years old and was enrolled in pre-kindergarten at the time of the hearing. When asked why she was seeking a modification of the 2020 order, she explained:

> To have a more stable environment for my child, and we were having problems with getting the exchange in medications. . . . It was history of name-calling as well, and false accusations of neglect to my child. And I just thought that I should bring that over to the Court and let it be known.

When asked how D.P.R.'s environment was unstable, she replied: "It was a lot of going back and forth, swapping in between the week, just trying to keep track of like what he needed, his clothes, you know, keeping a certain schedule, especially if he was

4

sick[; t]here was a lot of going back and forth going on." Robledo opined that the arrangement provided in the 2021 temporary orders worked "[a] lot better."

Robledo identified several text message exchanges she had with Rogers, and they were entered into evidence. On one occasion, Robledo texted Rogers asking him to pick up D.P.R. from daycare because she needed to get a COVID shot for her job; Rogers complied but expressed doubt as to the veracity of Robledo's excuse and told her he would call her employer to confirm it, although he never did. In other exchanges, Rogers repeatedly called Robledo "[expletive] stupid." The text messages were not dated, but Robledo said they were sent "around 2022." She agreed with her counsel that the "name calling . . . has gotten better" since she filed for modification.[4]

Robledo further complained that Rogers "would never provide his own set of clothes for daycare or school," blamed her every time the child was sick, and did not tell her the name of a pediatrician that he took the child to see. Robledo also testified that Rogers had been arrested for "racing," though she acknowledged the case against him was "dismissed." Robledo agreed that D.P.R. "has sustained injuries since July of 2020." She said these injuries occurred "primarily . . . between my house and [Rogers's] house" but were "normal childhood" injuries and did not involve broken bones or hospitalization. Finally, Robledo asserted that Rogers does not call her to "have electronic communication" with D.P.R. during her periods of possession.

Robledo stated that Rogers earns "around [$]21 an hour that I last saw," and she earns "around [$]2[,]800 a month" as an ophthalmic technician. She asked for an award

---

[4] Robledo also agreed with her counsel that "[t]he false accusations of neglect by [Rogers] against you . . . has gotten better since . . . 2021." However, she did not testify as to any "false accusations of neglect by [Rogers]."

5

of retroactive child support. She also stated that her living expenses increased since 2020 because she had "moved from an apartment to a home." Later, Robledo said that Rogers is unemployed.

On cross-examination, Rogers's counsel presented Robledo with a transcript of her deposition testimony dated February 21, 2023, and it was entered into evidence. When asked at the deposition for the reason she was seeking modification, Robledo testified: "Wanting more time with my child." She elaborated at the deposition as follows:

> [D.P.R.] was getting really attached to me, to the point where he didn't want to sleep alone. And the times that I did see him, he would just be very clingy, and I know children are like that when they're little, which is okay, but it would just be a little bit too much, so I believe on one of his visits to the doctor, the doctor stated that it could be separation anxiety, because I did explain the visitation, and that's when I knew that it started affecting him that way. Until this day, I know it may not be the right thing to do, but he does still sleep with me in the bed, and he's still very very much attached to me.

At trial, counsel asked why Robledo gave "more information" at the final hearing than she did at the deposition, and she explained: "I was very nervous during that deposition. I was being recorded. I had a microphone on my shirt. I had never done anything like that, and today you're telling me to show or speak to the Court the changes, and the reason for modifications." When Rogers's counsel asked when the 2-2-3 custody arrangement began to "not work for you," Robledo testified at trial:

> At the point of having to go to two doctors visits because I couldn't get my medication back, and sometimes insurance not covering it for having to refill it again. I would have to pay out of pocket because he didn't want to return the medication. It was a lot of back-and-forth as to like okay, I'm at fault for him being sick, what am I doing wrong? I'm not a good mom, etc.

Robledo denied that Rogers ever called her names in front of D.P.R. or that the child ever saw the text messages entered into evidence.

6

Rogers's counsel attempted to ask Robledo about the MSA, but the trial court sustained an objection to the testimony, noting that the MSA "was prior to the final order which the court signed" and was confidential. The trial court stated that "the date of the formal order is the date from which we're going forward."

On re-direct examination, Robledo agreed with her counsel that the text messages entered into evidence "are representative of" other messages Rogers sent to her. She specifically agreed that "[b]efore July 2020, [there were] text messages with [Rogers] that would show the same issues." She agreed, though, that "[s]ince July 2020, [there have] been issues with [Rogers] that did not exist before regarding problems with medications."

Rogers testified that he "shouldn't have" called Robledo stupid, but he said "[i]t has nothing to do with my parenting." He denied that "there were issues" regarding the exchange of D.P.R.'s medication or clothing. He said he told Robledo that the pediatrician he took the child to was "the same pediatrician that she takes him to."

Rogers said he previously earned "about [$]3,000 a month" as an ophthalmic technician but stopped working in November of 2023 and presently attends nursing school.[5] He explained that he has a child from another relationship that lives with him, and the mother of the child also lives with him and helps to take care of D.P.R. during his periods of possession. When Robledo's counsel asked "[w]hat is it about the current schedule that you don't agree with," Rogers replied: "Just [D.P.R.] not seeing his dad. It doesn't work for him. Has changed dramatically since these Temporary Orders." He stated that D.P.R. started having constipation and "throwing tantrums" since the

_____

[5] Robledo's counsel later agreed with the trial court that there was no "indication, argument, or evidence" that Rogers was intentionally unemployed.

7

possession arrangement was altered by the temporary orders in 2021. Rogers testified: "He hits kids, he hits teachers. All of this has taken place since that 2-2-3 schedule has changed." He said reverting to the 2-2-3 schedule would be in D.P.R.'s best interests.

## D. Final Orders

On May 7, 2024, the trial court signed an order granting Robledo's motion to modify and directing the parties to prepare a more detailed order. On May 22, 2024, the trial court signed its final "Order in Suit to Modify Parent-Child Relationship." The order provided, in relevant part, that: (1) the parties shall remain joint managing conservators of D.P.R.; (2) Robledo shall have the exclusive rights to designate his primary residence without geographical restriction and to enroll him in school; (3) Rogers shall have standard visitation rights, *see* TEX. FAM. CODE ANN. ch. 153, subch. F; and (4) Rogers shall pay $400 per month in child support. The order denied Robledo's request for retroactive child support.

Rogers requested findings of fact and conclusions of law, but the trial court did not file any. This appeal followed.[6]

## II. DISCUSSION

## A. Standard of Review

The trial court is afforded great discretion when determining issues relating to the parent-child relationship, including conservatorship, visitation, and child support. *See In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021); *In re K.L.C.*, 672 S.W.3d 734, 743 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.); *In re K.M.B.*, 606 S.W.3d 889, 894 (Tex.

---

[6] Rogers filed his second amended brief on November 12, 2024. On December 16, 2024, the Clerk of this Court advised Rogers that "it appears no reporter's record was requested in this matter" even though "one or more issues presented requires a reporter's record." After Rogers made arrangements to pay for the reporter's record, it was filed with this Court on March 13, 2025.

App.—Dallas 2020, no pet.). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court does not abuse its discretion when its order is supported by "some evidence of a substantive and probative character." *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 667 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

In determining whether the trial court abused its discretion, we review the "evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *In re J.I.Z.*, 170 S.W.3d 881, 883 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). "[T]he trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). Thus, we "defer to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions." *Id.*

The sufficiency of the evidence to support a custody or support ruling is a relevant factor to consider in assessing whether the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). To assess this factor, "we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion." *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.). Because no findings of fact were entered, we infer that the trial court made all findings necessary to

support its judgment. *See Worford*, 801 S.W.2d at 109.

## B.    Applicable Law

"It is the policy of this state to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 154.002; *see In re A.C.*, 560 S.W.3d 624, 632 (Tex. 2018). Accordingly, a court "may refer a suit affecting the parent-child relationship to mediation." TEX. FAM. CODE ANN. § 153.0071(c). An agreement reached at mediation will be binding on the parties if it is signed by the parties and their attorneys and prominently states that it "is not subject to revocation." *Id.* § 153.0071(d). Generally, a party is entitled to judgment on the agreement unless its terms are contrary to the child's best interests. *See id.* § 153.0071(e), (e-1).

With certain exceptions not applicable here, a trial court may modify an order affecting conservatorship, possession, or child support only if: (1) modification would be in the best interest of the child; and (2) the circumstances of the child or another party affected by the order "have materially and substantially changed" since the earlier of (A) the date of the rendition of the order, or (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based. *Id.* §§ 156.101(a)(1), .401(a). "The party requesting the modification bears the burden to show such a change in circumstances." *In re N.H.N.*, 580 S.W.3d 440, 445 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

## C.    Analysis

Rogers argues by a single issue that the trial court abused its discretion because:

(1) the MSA complied with statutory requirements; (2) there was no evidence of a material and substantial change in circumstances since 2020; and (3) the court's decision "lacks supporting evidence and was arbitrary."[7]

Rogers is correct that, because the MSA was signed by the parties and their attorneys and conspicuously stated it was irrevocable, it complied with statutory requirements. *See* TEX. FAM. CODE ANN. § 153.0071(d). Accordingly, the trial court properly rendered judgments reflecting the terms of the MSA in 2020. *See id.* § 153.0071(e). However, the orders on appeal in this case purported to modify the 2020 orders. Rogers cites no authority, and we find none, indicating that an order incorporating the terms of an MSA may not be modified under the procedures set forth in chapter 156 of the Texas Family Code. The question we must answer, then, is whether the trial court properly followed those statutory procedures when it granted Robledo's motion to modify.

In that regard, Rogers's remaining two sub-issues concern the merits of the trial court's modification orders. He first contends there was no evidence of a material and substantial change in circumstances since the MSA was executed.[8] *See id.* § 156.101(a)(1), .401(a). We note that Rogers conceded in his counterpetition that "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of the signing of the [MSA] on which the order to be modified is based." Ordinarily, "[o]ne party's allegation of changed circumstances of the parties constitutes a judicial admission of the common

---

[7] Robledo has not filed a brief to assist us in the resolution of this appeal.

[8] It appears the trial court believed the pertinent inquiry was whether there was a material and substantial change in circumstances since the entry of the 2020 orders. However, the record firmly establishes that those orders were based on a "mediated or collaborative law settlement agreement"; therefore, the correct reference date for the material-and-substantial-change inquiry is the date the MSA was signed. *See* TEX. FAM. CODE ANN. §§ 156.101(a)(1), .401(a).

element of changed circumstances of the parties in the other party's similar pleading." *In re A.E.A.*, 406 S.W.3d 404, 410 (Tex. App.—Fort Worth 2013, no pet.) (noting that "[a]dmissions in trial pleadings are judicial admissions in the case in which the pleadings are filed; the facts judicially admitted require no proof and preclude the introduction of evidence to the contrary"); *In re L.C.L.*, 396 S.W.3d 712, 718 (Tex. App.—Dallas 2013, no pet.); *Thompson v. Thompson*, 827 S.W.2d 563, 566 (Tex. App.—Corpus Christi 1992, writ denied). *But see Epps v. Deboise*, 537 S.W.3d 238, 246 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding appellant's "allegation that there were material and substantial changes regarding visitation and child support do not constitute judicial admissions that there was a material and substantial change regarding designating the primary residence of the child"). However, Rogers non-suited his counterpetition at the beginning of the May 6, 2024 final hearing. Therefore, there is no judicial admission. *See In re A.N.G.*, 631 S.W.3d 471, 480 (Tex. App.—El Paso 2021, no pet.) (concluding that mother did not "ma[k]e a judicial admission as to change in circumstances justifying a change in conservatorship" because her prior pleading alleging such was non-suited); *Atlas Gulf-Coast, Inc. v. Stanford*, 329 S.W.3d 920, 923 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[J]udicial admissions cannot be based on an abandoned pleading.").

We agree with Rogers that the record evidence does not support a finding that there was a material and substantial change in the circumstances of D.P.R. or any other affected party since the date the parties signed the MSA in June of 2020. "A trial court's determination of changed circumstances is not guided by rigid rules, but is fact-specific." *In re C.C.J.*, 244 S.W.3d 911, 924 (Tex. App.—Dallas 2008, no pet.); *see In re T.W.E.*, 217 S.W.3d 557, 559 (Tex. App.—San Antonio 2006, no pet.). "A movant is required to

show the conditions as they existed at the time of entry of the prior order." *In re T.W.E.*, 217 S.W.3d at 559. "Once such conditions have been established, the movant must show what material changes have occurred in the intervening period." *Id.* at 559–60.

At the final hearing, Robledo stated that she filed for modification "[t]o have a more stable environment for [D.P.R.]." She asserted Rogers's visitation should be restricted because of the following events which occurred since 2020: (1) he threatened to call her employer because he did not believe she had to obtain a COVID shot; (2) he once failed to exchange the child's medication, requiring her to obtain additional medication; (3) he did not tell her the name of the pediatrician he took the child to; and (4) he was arrested for street racing but was not formally charged. Robledo further alleged that Rogers sent text messages to her in which he called her names and used inappropriate language and that he made "false allegations of neglect" against her; however, she agreed that pre-2020 text messages "would show the same issues" and she conceded that those issues have "gotten better" since the initiation of the modification proceedings.

Rogers largely denied Robledo's specific allegations. As the trier of fact, the trial court was entitled to believe all of Robledo's testimony and to disbelieve all of Rogers's. *See In re P.M.G.*, 405 S.W.3d at 410; *In re J.I.Z.*, 170 S.W.3d at 883. Nevertheless, other than the street racing arrest, the facts testified to by Robledo merely reflect inconveniences and minor logistical challenges which are entirely ordinary and should be expected in any co-parenting arrangement, whether it is based on a 2-2-3 possession arrangement or standard visitation. They do not support a finding that anyone's circumstances were significantly different as compared to June of 2020, when the parties agreed to the 2-2-3 possession arrangement. And we cannot conclude the street racing

arrest, alone, constitutes such a change. There was no allegation that the incident occurred during Rogers's period of possession of D.P.R. or that D.P.R. was endangered or otherwise affected by the arrest in any way. On this record, Robledo failed to meet her burden. *See in re N.H.N.*, 580 S.W.3d at 445; *In re T.W.E.*, 217 S.W.3d at 559.[9]

We conclude the trial court abused its discretion by finding that there has been a material and substantial change in circumstances since the 2020 MSA. Therefore, the court erred in granting the relief requested in Robledo's petition to modify. *See* TEX. FAM. CODE ANN. § 156.101(a)(1), .401(a).

### III.    CONCLUSION

The trial court's 2024 judgments are reversed and we render judgment denying Robledo's petition to modify in its entirety. Possession, access, and child support shall proceed according to the 2020 orders.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
5th day of June, 2025.

---

[9] As noted, Rogers also argues the trial court's order "lacks supporting evidence and was arbitrary." We construe this sub-issue as a challenge to the sufficiency of evidence supporting the trial court's finding that the modification order was in D.P.R.'s best interests. However, in light of our conclusion above, we need not address this sub-issue. *See* TEX. FAM. CODE ANN. §§ 156.101(a)(1), .401(a); *see also* TEX. R. APP. P. 47.1.